ROWLEY, President Judge:
In this appeal filed by original defendants Jerome B. Kotzen, C.P.A., Daniel J. Paci, Esquire, and Friedlander, Dunn & Company (hereinafter “appellants”), we consider whether the trial court erred in granting summary judgment in favor of additional defendants Spector Gadon & Rosen, P.C. and Paul R. Rosen, Esquire (hereinafter “appellees”). After considering the parties’ arguments in light of the appropriate standard of review, see American States Ins. Co. v. Maryland Casualty Co., 427 Pa.Super. 170, 180-81, 628 A.2d 880, 885-86 (1993), and after reviewing the record and the applicable case law, we affirm the judgment in favor of appellees.
The action underlying this appeal was commenced on January 22, 1991, when Warren B. Goodman and Joan Goodman *74 (hereinafter “the Goodmans”) filed a complaint against appellants. The Goodmans set forth eight separate counts in their complaint, alleging professional malpractice and negligence, breach of fiduciary duty and conflict of interest, bad faith breach of the duty of fair dealing and good faith, fraudulent misrepresentation and fraudulent concealment, tortious interference with contractual relations, tortious interference with prospective economic advantage, intentional infliction of emotional distress, and loss of consortium. The complaint alleges that appellants’ actions caused Warren to lose control of Metallurgical Products Company, Inc. (hereinafter “Metallurgical”) by forcing him to sell the company to his son Michael under unfavorable circumstances. The complaint alleges that the Goodmans suffered economically because of the loss of control of the company. The Goodmans also allege that appellants’ actions divided their family by enabling Michael to seize Metallurgical for his own benefit and to the detriment of Warren, Joan, and their son Buddy.
In support of their claims, the Goodmans averred the following. Warren Goodman formerly owned and served as President of Metallurgical. In 1982, he owned all the stock in Metallurgical and operated it as a profitable business. Daniel J. Paci, Esquire, is an attorney admitted to practice law in Pennsylvania and practices law as a part of the accounting firm, Friedlander, Dunn & Company (hereinafter “Friedlander”). Jerome B. Kotzen, C.P.A., is a certified public accountant and a partner in Friedlander. Kotzen served as an accountant for Metallurgical and the Goodmans.
Warren sought and received advice from Kotzen and Fried-lander regarding his estate plan. Specifically, Warren wanted to provide equally for Michael and Buddy. He effectuated Kotzen’s advice in that regard by giving Michael fifty percent of the company’s class A voting stock, requiring Metallurgical to purchase his shares upon his death, and providing an option for Buddy to purchase fifty percent of the class A stock held by Michael.
Subsequently, Paci became involved in tax planning for Metallurgical, the Goodmans, and Michael. Paci devised a *75 plan (hereinafter “Estate Freeze Plan”) to limit estate taxes on Michael’s share of Metallurgical. Because Paci and the other appellants assured Warren that their plan would have no effect on his estate plan, he effectuated the Estate Freeze Plan. That plan gave Michael an option to purchase fifty percent of Metallurgical’s class B non-voting stock, thus giving him a fifty percent ownership interest in Metallurgical’s equity and assets. That plan, however, did not provide Buddy with an opportunity to acquire an equal share in class B stock upon Warren’s death and would have disrupted Warren’s estate plan. When Warren learned of the impact of the Estate Freeze Plan, he sought to have Michael execute an agreement to sell fifty percent of his class B stock to Buddy upon Warren’s death. Michael refused to do so. Therefore, Warren was left with no choice but to negotiate the sale of Metallurgical. He entered into negotiations with Michael and Buddy in an effort to have Michael and Buddy purchase his interest in Metallurgical. Michael, however, wanted a controlling interest in the company.
During this time period, appellants advised and assisted Michael in his attempt to seize control of Metallurgical. Pursuant to appellants’ advice, Michael executed, on Metallurgical’s behalf, a Subchapter S election for federal and state taxes, which had a profoundly disproportionate impact on the tax liabilities of Warren and Michael. However, Warren, Michael, and appellants decided that Metallurgical would make a sufficient distribution so that Warren could pay his share of the taxes.
On February 21, 1990, Warren, Michael, and Kotzen met at Kotzen’s office to discuss the payment of Metallurgical’s taxes. When Michael threatened to prevent Metallurgical from making the distribution necessary for Warren to pay the taxes, Warren agreed to sell the company to him. The agreement was contingent upon Buddy agreeing to give up his interest in the class A stock. Buddy’s refusal to do so rendered the agreement ineffective. Michael subsequently initiated a lawsuit, which he settled favorably. He now has 100% control and ownership of Metallurgical.
*76 Appellants filed an answer and new matter to the foregoing allegations, denying liability and denying that the Goodmans had sustained damages. They also alleged that if the Good-mans did sustain damages, those damages were caused by appellees, who were Warren’s attorneys with regard to the settlement with Michael. Appellants subsequently filed a joinder complaint against appellees, alleging that the Good-mans’ damages were caused solely by the negligence, misfeasance, and malfeasance of appellees. Appellees filed preliminary objections, which the trial court denied. Appellees then filed an answer and new matter, as well as a subsequent motion for summary judgment, or, in the alternative, bifurcation. The trial court granted the motion for summary judgment, and appellants filed this timely appeal.
In this appeal, appellants contend that the trial court erroneously relied upon Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick, 526 Pa. 541, 587 A.2d 1346 (1991), cert. denied, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991), in granting summary judgment in favor of appellees. In that case, the Supreme Court held that a plaintiff who agrees to settle a case, but subsequently becomes dissatisfied with that settlement, cannot file a malpractice action against his or her attorney, absent fraudulent inducement on the part of the attorney. In support of its decision, the Court stated,
The primary reason we decide today to disallow negligence or breach of contract suits against lawyers after a settlement has been negotiated by the attorneys and accepted by the clients is that to allow them will create chaos in our civil litigation system. Lawyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that ‘could have been done, but was not.’ We refuse to endorse a rule that will discourage settlements and increase substantially the number of legal malpractice cases. A long-standing principle of our courts has been to encourage settlements; we will not now act so as to discourage them. *77 Id. at 548, 587 A.2d at 1349. The Court also opined that “[t]o permit [such suits] results in unfairness to the attorneys who relied on their client’s assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system.” Id. at 552, 587 A.2d at 1351. The Court further stated that “litigation concerning litigation” cases would henceforth be viewed with a jaundiced eye. Id. at 550, 587 A.2d at 1350.
We agree with the trial court that the Supreme Court’s ruling in Muhammad precludes appellants from joining appellees as additional defendants in this case. The concerns discussed by the Supreme Court in that case are implicated whether a disgruntled client files a claim against his attorney or whether a third party, in effect, files a claim against the client’s attorney on the client’s behalf. The Supreme Court’s objective of encouraging settlements would be thwarted if we were to permit a party to circumvent Muhammad in this way.
Appellants contend that extending Muhammad to restrict the rights of parties who were not participants in the underlying settlement is a denial of due process. We disagree. Our decision does not preclude appellants from defending against the Goodmans’ claims by arguing that their wrongful conduct did not in fact cause the Goodmans’ injuries. We merely hold that appellees cannot be held liable to the Goodmans for their injuries on the basis that those injuries were caused by appellees’ negligence in handling the settlement. That is so whether the Goodmans themselves attempt to place liability upon appellees or whether, as here, a third party attempts to place liability upon appellees.
We also note that this is not the only situation in which a defendant’s ability to state a viable claim against an additional defendant is dependent upon the plaintiffs ability, or lack thereof, to do so. Notably, a defendant cannot file a complaint against an additional defendant alleging sole liability on the part of the additional defendant after the statute of limitations on the plaintiffs cause of action has run. See Wnek v. Boyle, 374 Pa. 27, 96 A.2d 857 (1953); Dickson v. *78 Lewandowski, 228 Pa.Super. 57, 323 A.2d 169 (1974). For these reasons, we conclude that the trial court did not err in granting summary judgment on the basis of the Supreme Court’s decision in Muhammad.
Furthermore, joinder of appellees under the circumstances of this case is not permitted under Pa.R.C.P. 2252.[1] That rule provides in relevant part the following:
Except as provided by Rule 1706.1, any defendant or additional defendant may join as an additional defendant any person, whether or not á party to the action, who may be
(1) solely liable on the plaintiffs cause of action, or
(2) liable over to the joining party on the plaintiffs cause of action, or
(3) jointly or severally liable with the joining party on the plaintiffs cause of action, or
(4) liable to the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiffs cause of action is based.
Pa.R.C.P. 2252(a). That rule is broadly construed to effectuate the purpose of avoiding multiple lawsuits by settling, in one action, all claims arising from transactions or occurrences which gave rise to the plaintiffs complaint. Olson v. Grutza, 428 Pa.Super. 378, 389, 631 A.2d 191, 196-97 (1993).
Appellants contend that the Goodmans’ damages were “caused entirely and completely by the negligence, misfeasance and malfeasance of [appellees] in advising and representing Warren and in negotiating for him the terms of the settlement and sale.” Complaint Against Additional Defendants, para. 6. Because appellants are alleging that appellees are solely liable to the Goodmans, the cause of action raised in *79 appellants’ complaint must be the same cause of action set forth by the Goodmans. “Cause of action,” for purposes of Rule 2252, has been broadly construed to mean that the “additional defendant’s liability [be] related to the original claim which plaintiff asserts against the original defendant.” Olson, supra at 387, 631 A.2d at 195 (1993) (quoting Somers v. Gross, 393 Pa.Super. 509, 514, 574 A.2d 1056, 1058 (1990)). Joinder is not permitted where the allegations contained in the original complaint and the allegations contained in the joinder complaint “relate to different harms to be proven with different evidence as to different occurrences happening at different times.” Id. at 387, 631 A.2d at 195-96 (quoting Somers, 393 Pa.Super. at 518, 574 A.2d at 1060-61).
Appellants argue that the causes of action in the original complaint and in the joinder complaint are the same because they both involve the settlement between Warren and his son. Appellants contend that they are being wrongfully blamed for Warren’s unfavorable settlement with his son, and that appellees are the responsible parties because they counseled Warren with regard to the settlement. The Goodmans, however, do not allege negligence or wrongdoing on appellants’ part in connection with the settlement. Rather, they allege negligence and wrongdoing on appellants’ part with regard to their actions prior to the settlement. The fact that appellants’ wrongdoing created a situation in which settlement was allegedly Warren’s only option does not transform the Goodmans’ claim into one based upon dissatisfaction with a settlement. Contrary to appellants’ assertion, the settlement did not give rise to the Goodmans’ damages. Rather, the settlement merely provides proof of, as well as a measure of, damages allegedly sustained by the Goodmans.
Appellants further contend that the outcome of this case is controlled by this Court’s opinion in Somers v. Gross, 393 Pa.Super. 509, 574 A.2d 1056 (1990). Appellants assert that Somers “uncannily mirrors” this case. We disagree. In Somers, both the original defendants, the plaintiffs’ accountants, and the additional defendants, the plaintiffs’ attorneys, advised the plaintiffs with regard to their tax filing for the *80 year 1984. In filing their joinder complaint, the accountants argued that the plaintiffs had not relied upon their advice, but rather, had relied upon the advice of their attorneys. The trial court granted summary judgment in favor of the attorneys, and this Court reversed. In so doing, the Court determined that there was one central common question in that case, that is, who was responsible for giving the plaintiffs improper tax advice and providing related services. In addition, the Court concluded that “[tjhere was one course of events leading to plaintiffs’ alleged harm.” Id. at 514, 574 A.2d at 1058.
In the present case, on the other hand, there is not one central common question. Appellants’ improper conduct prior to the settlement is not negated even if, as appellants allege, appellees negligently negotiated and' counseled the settlement. Moreover, there was not only one course of events in this case. Rather, appellants’ wrongful conduct allegedly gave rise to, and exacerbated, a dispute between Warren and his son. Appellees were not involved in those events. Subsequently, Warren entered into a settlement agreement with his son which, he contends, was his only option in light of the state of events which was allegedly caused by appellants’ wrongdoing. The Goodmans have no disagreement with appellees’ handling of the. settlement matters. Rather, they blame appellants for the fact that they had to enter into the settlement in the first place.
This case is also distinguishable from Gordon v. Sokolow, 434 Pa.Super. 208, 642 A.2d 1096 (1994). In Gordon, the plaintiffs filed a legal malpractice action against the attorneys who represented them in a real estate transaction. The attorneys attempted to join the proposed buyer and its agent, alleging fraud and intentional and/or negligent misrepresentation. Although the claims raised in the joinder complaint were separate from the cause of action raised in the plaintiffs’ complaint, this Court determined that joinder was proper pursuant to Rule 2252(a)(4). The Court stated:
Attorneys Sokolow and Salamon are arguing that the fraudulent conduct of Empire and Nolan affected their ability to *81 properly advise their clients. Sokolow and Salamon have attempted to plead facts that would sustain a fraud or intentional and/or negligent misrepresentation action against additional defendants, Empire and Nolan. Joinder would be permitted on this independent cause of action under Rule 2252(a)(4) because that section allows joinder of a party who may be liable to the original defendant on any cause of action arising out of the transaction or occurrence upon which the plaintiffs action is based.
Id. at 217, 642 A.2d at 1101. In the present case, appellants did not allege an independent cause of action against appellees. Appellants only allege that appellees are solely liable to the Goodmans. Therefore, appellants cannot rely on Gordon in support of their claim that joinder was proper.
We agree with appellees that the situation presently before us is more analogous to that considered in Austin J. Richards, Inc. v. McClafferty, 371 Pa.Super. 269, 538 A.2d 11 (1988), appeal denied, 520 Pa. 570, 576, 549 A.2d 131, 136 (1988). In that case, the plaintiff filed an action against the original defendant in which she alleged interference with contract and slander of title. Those allegations were based on the filing of a lis pendens notice on property the plaintiff was attempting to sell to a third party. The original defendant claimed that the plaintiff had agreed to sell the property to a corporation of which he was the sole shareholder. After the plaintiff filed her complaint against the original defendant, he filed a joinder complaint against the plaintiffs attorneys, alleging that the attorneys negligently advised the plaintiff to reject settlement offers with regard to the real estate transaction. This Court held that summary judgment in favor of the additional defendants was proper. The Court stated,
To attempt to interject a legal malpractice claim and compel the plaintiff to seek recovery against her attorneys because of alleged negligent advice regarding settlement was clearly improper and outside the joinder permitted by Pa.R.C.P. 2252(a). The plaintiff did not assert a claim for malpractice against her attorneys, and the defendant will not be allowed to force her to do so in her action against the defendant. *82 Id. at 278, 538 A.2d at 16. Simply stated, a claim based on interference with contract and slander'of title is not the same as a claim based on legal malpractice. Therefore, joinder of the attorneys was not proper in Austin.
The Goodmans’ complaint includes eight counts, none of which relate to the settlement. The causes of action set forth in the complaint relate to appellants’ actions with regard to their handling of Warren’s estate plan and Metallurgical’s corporate affairs and their assisting Michael in his acquisition of the company. The cause of action set forth in the joinder complaint relate to appellees’ actions with regard to the handling of the settlement. Those causes of action are not one and the same. Although both the Goodmans and appellants allege professional malpractice, those claims have different factual bases. Therefore, the allegations relate to different harms to be proven with different evidence as to different transactions and occurrences happening at different times. See Olson, supra. Under these circumstances, joinder is not proper.
Judgment affirmed.
CAVANAUGH, J., files a Concurring Opinion.

. We note that the trial court did not specifically rely on Rule 2252 in support of its decision. However, the court did cite Austin J. Richards, Inc. v. McClafferty, 371 Pa.Super. 269, 538 A.2d 11 (1988), appeal denied, 520 Pa. 570, 576, 549 A.2d 131, 136 (1988), a case which involves the application of that rule. In addition, although the parties do not rely substantially on Rule 2252, they cite cases in which the Court applied that rule.