657 A.2d 938

**Robert M. McMAHON, Appellant,**

v.

**John G. SHEA, Esquire, Phyllis McCormick Shea, Esquire, Michael S. Dinney, Esquire and Shea & Shea, A Partnership, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1994.

Filed Feb. 23, 1995.

Reargument Denied April 25, 1995.

Joseph W. Fullem, Jr., Philadelphia, for appellant.

Patrick T. Ryan, Philadelphia, for appellees.

Before ROWLEY, President Judge, and CAVANAUGH, WIEAND, CIRILLO, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and SAYLOR, JJ.

WIEAND, Judge:

If, before a client signs a written agreement, his or her lawyer negligently fails to advise the client correctly about pertinent principles of law or the impact of the agreement upon the client's future rights and obligations, is the lawyer immunized from liability to the client because the agreement was executed in settlement of a pending marital dispute? The trial court held that the lawyer was immune from liability under such circumstances and sustained preliminary objections in the nature of a demurrer to the client's complaint seeking damages for legal malpractice. The client appealed. After careful review, we reverse and remand for further proceedings.

When Robert McMahon was separated from his wife, the law firm of Shea and Shea represented and advised him. Upon his lawyer's advice, McMahon entered an agreement to pay his wife the sum of $791.00 per week, half of which was deemed child support and the other half of which was deemed alimony. The only provision for termination of these weekly payments was a clause referring to the time when "the

youngest child reached age twenty-one, is emancipated or finishes college, whichever occurs last." Subsequently, Mrs. McMahon filed a complaint in divorce. Allegedly upon the advice of Shea and Shea, McMahon agreed that the agreement for alimony should be incorporated but not merged into the decree in divorce.

Approximately two months after the divorce decree had been entered, Mrs. McMahon was remarried. McMahon was advised by his lawyers that his obligation to pay further alimony was terminated by the provisions of the Divorce Code, and a petition was filed to terminate the order requiring the payment of such alimony. The trial court, however, refused to grant relief, and the Superior Court affirmed. These courts held that the parties' agreement had survived the decree of divorce ending the marriage and required McMahon to pay alimony until the youngest child became twenty-one, was emancipated or finished college. See: *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360 (1992).

McMahon then filed an action against his lawyers, alleging that Shea and Shea had been guilty of negligence for failing to advise him regarding the duration of his duty to pay alimony under the Divorce Code and for failing to review the agreement and explain to him the duration of his duty to pay alimony under the agreement. He also contended that the lawyers had been negligent for allowing the property settlement agreement to be incorporated but not merged in the final decree of divorce. When Shea and Shea filed preliminary objections in the nature of a demurrer to McMahon's complaint, the trial court dismissed the action. It held that, because McMahon had voluntarily signed the agreement in settlement of a pending action, he could have no cause of action against the lawyers.

In reviewing the trial court's ruling, we accept as true all facts which have been well pleaded and all inferences reasonably deducible therefrom. We then determine whether, on the facts alleged, the law says with certainty that no recovery is possible. If a doubt exists, that doubt must be

resolved in favor of the plaintiff. *Collas v. Garnick,* 425 Pa.Super. 8, 12, 624 A.2d 117, 119 (1993), *allocatur denied,* 535 Pa. 672, 636 A.2d 631 (1993); *Kemper Nat'l P & C Cos. v. Smith,* 419 Pa.Super. 295, 299, 615 A.2d 372, 374 (1992); *Taras v. Wausau Ins. Cos.,* 412 Pa.Super. 37, 42, 602 A.2d 882, 884, *allocatur denied,* 532 Pa. 657, 615 A.2d 1313 (1992).

In *Collas v. Garnick, supra,* 425 Pa.Super. 8, 624 A.2d 117, the Superior Court said:

The elements which must be alleged in order to state a cause of action for legal malpractice are: "the employment of the attorney or other basis for duty; the failure of the attorney to exercise ordinary skill and knowledge; and that such negligence was the proximate cause of damage to the plaintiff." *Liberty Bank v. Ruder,* 402 Pa.Super 561, 567, 587 A.2d 761, 764–765, *allocatur denied,* 528 Pa. 637, 598 A.2d 994 (1991). See also: *McHugh v. Litvin, Blumberg, Matusow & Young,* 525 Pa. 1, 5, 574 A.2d 1040, 1042 (1990); *Rizzo v. Haines,* 520 Pa. 484, 499, 555 A.2d 58, 65 (1989). A lawyer will be found to be negligent if he or she fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances. *McPeake v. Cannon, Esquire, P.C.,* 381 Pa.Super. 227, 232, 553 A.2d 439, 441 (1989). The lawyer has a duty to inform himself or herself of the manner in which a proposed settlement affects the client and to inform the client regarding consequences thereof. 7A C.J.S. Attorney and Client, § 261 (1980), citing *Wade v. Clemmons,* 84 Misc.2d 822, 377 N.Y.S.2d 415 (1975). See also: *In re Snitoff,* 53 Ill.2d 50, 289 N.E.2d 428 (1972), *cert. denied, Snitoff v. Board of Managers of Chicago Bar Assn.,* 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 (1973). As one trial court has observed,

a lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations.

*Lang v. Anton,* 40 D. & C.3d 47, 48 (Wash. [Pa.Com.Pl.] 1983). See also: *Ziegelheim v. Apollo,* 128 N.J. 250, 262, 607 A.2d 1298, 1304 (1992) (attorneys should advise clients

with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks.). Although a lawyer is not expected to be infallible, he or she is expected to conduct that measure of research sufficient to allow the client to make an informed decision. 7A C.J.S. at § 257. In order for a lawyer to advise a client adequately, he or she is obligated to scrutinize any contract which the client is to execute, and thereafter must disclose to the client the full import of the instrument and any possible consequences which might arise therefrom. *Id.* at n. 96, citing *Ramp v. St. Paul Fire & Marine Insurance Co.*, 263 La. 774, 269 So.2d 239 (1972); *Gill v. DiFatta*, 364 So.2d 1352 (La.App.1978). See also: *Soderquist v. Kramer*, 595 So.2d 825 (La.App.1992); *Bush v. O'Connor*, 58 Wash.App. 138, 791 P.2d 915 (1990). The lawyer, moreover, must be familiar with well settled principles of law and the rules of practice which are of frequent application in the ordinary business of the profession. *George v. Caton*, 93 N.M. 370, 377, 600 P.2d 822, 829 (1979).

*Id.*, 425 Pa.Super. at 12–14, 624 A.2d at 119–120.

The provisions of the Divorce Code which establish that the payment of alimony shall terminate upon the payee-spouse's remarriage are well known to lawyers who practice marital law. See: 23 Pa.C.S. § 3706. These provisions state a rule of substantive law of which the defendant-lawyers in this case should have been aware. Moreover, even if the lawyers were unfamiliar with the provisions of the Divorce Code, they had an obligation to familiarize themselves with the law before advising their client to sign a legal agreement containing language which created rights contrary to and in excess of those established by statute. If the lawyers negligently advised their client incorrectly about the duration of the client's duty to pay alimony or allowed him to execute an agreement more onerous than the substantive law required, it would seem that the client would have a cause of action for legal malpractice.

The trial court held, however, that a cause of action was barred by the decision of a panel of the Superior Court in

*Miller v. Berschler,* 423 Pa.Super. 405, 621 A.2d 595 (1993), which had extended the holding of the Supreme Court in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 587 A.2d 1346 (1991), *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991) to circumstances similar to those in the instant case. The Superior Court directed reargument of the instant case before a court en banc so that the *Miller* decision might be reviewed.

In *Muhammad,* the defendant-lawyers had represented parents who were asserting a claim for medical malpractice which, allegedly, had caused the death of their son. The parents, following negotiations, agreed to settle their claim for the sum of $26,500.00. They subsequently became dissatisfied with the amount of their settlement and sought to avoid their agreement. However, the trial court held that they were bound by their agreement and refused to allow them to withdraw. Thereafter, the parents filed an action against their lawyers for legal malpractice. They contended that the lawyers had been negligent in recommending the settlement amount. The trial court sustained preliminary objections in the nature of a demurrer to the parents' complaint and dismissed the action. When the case subsequently reached the Supreme Court, that Court held that the trial court had correctly dismissed the complaint for failure to state a cause of action for which relief could be granted. The Court reviewed the principles which favored settlements of lawsuits and then reasoned further as follows:

> Mindful of these principles, we foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies. To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system.

*Id.,* 526 Pa. at 552, 587 A.2d at 1351. Therefore, the Court held:

> [W]e will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which

that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Id.* at 546, 587 A.2d at 1348.

In *Miller v. Berschler, supra,* 423 Pa.Super. 405, 621 A.2d 595, a panel of the Superior Court expanded the holding of *Muhammad* to dismiss a legal malpractice action against a lawyer who had negligently failed to explain to a client his rights under the Divorce Code and who had failed to advise the client that the written agreement of settlement imposed more onerous obligations upon him than those imposed by statute. In *Miller,* the client had not complained about the amount of alimony to be paid or about the lawyer's judgment in recommending the payment of such amount. His complaint, rather, was in the lawyer's failure to explain that (1) under the law, the client's obligation to pay alimony terminated if his wife cohabited with another man, and (2) the terms of the agreement imposed an obligation of greater duration than that required by statute. As a result, the client had executed an agreement which required him to continue paying alimony even after his former wife had begun cohabiting with another man. A majority of the *Miller* panel held that the language used by the Supreme Court in deciding *Muhammad* was broad enough to immunize a lawyer who had negligently failed to advise a client about applicable legal principles and the effect of a written agreement so long as the agreement had been executed in settlement of pending litigation.

It is axiomatic, however, that a judicial decision is precedential authority only "for an identical or similar case afterwards arising or a similar question of law." Black's Law Dictionary (5th ed. 1979). "General expressions in an opinion must be considered in the light of and cannot be dissevered from the facts of that case; what is actually decided and controlling is the law applicable to the particular facts of that particular case and while all other statements and conclusions

therein are entitled to great consideration they are not controlling." *In re Trust Estate of Pew,* 411 Pa. 96, 105, 191 A.2d 399, 405 (1963), *overruled on other grounds, Estate of Tyler,* 474 Pa. 148, 377 A.2d 157 (1977).

The salutary policy which formed the basis for the Supreme Court's decision in *Muhammad* is not equally applicable where the lawyer's alleged negligence does not lie in the exercise of judgment regarding an amount to be accepted or paid in settlement of a claim, but, rather, in the failure to advise the client properly about well established principles of law and the impact of an agreement upon the substantive rights and obligations of the client. A person about to enter a contract, all would agree, should be entitled to rely on the advice of his or her lawyer regarding the impact of the terms of the agreement. Should the result be different because the agreement is intended to settle property rights which are the subject of pending litigation? We think not. With respect to counsel's duty to advise a client, he or she is required to exercise the same degree of care as if advising a client about an agreement which is not part of a settlement of pending litigation. See: *Collas v. Garnick, supra,* 425 Pa.Super. 8, 624 A.2d 117. See also: *White v. Kreithen,* 435 Pa.Super. 115, 121–22, 644 A.2d 1262, 1265 (1994) (client may maintain malpractice action where attorney's negligent conduct before settlement caused damage).

The rule announced by the Supreme Court in *Muhammad* is limited to cases involving facts similar to those which caused the Court's ruling. Thus, *Muhammad* has been held to be controlling where the lawyer's alleged negligence consisted of "advising and representing [a client] and in negotiating for him the terms of [a] settlement and sale." *Goodman v. Kotzen,* 436 Pa.Super. 71, 77–79, 647 A.2d 247, 250 (1994). *Muhammad* was also held to be determinative where the client merely expressed dissatisfaction with the amount of her marital award and averred that the lawyer's conduct had caused her to receive "a deficient amount" of marital property, alimony and other available relief. *Spirer v. Freeland & Kronz,* 434 Pa.Super. 341, 344–46, 643 A.2d 673, 675 (1994). Finally, in *Martos v. Concilio,* 427 Pa.Super. 612, 629 A.2d

1037 (1993), *Muhammad* was held to be controlling where the lawyer's alleged negligence had consisted of an "alleged failure to adequately represent [the client] in negotiations of the settlement agreement." *Id.* at 613, 629 A.2d at 1038. These are situations in which the client perceived a deficiency in the lawyer's exercise of his or her professional judgment.

The facts in the instant case are not similar. The alleged negligence of the defendant-lawyers in this case involved the failure to advise the client about well established principles of law and the impact of the agreement upon the client's future obligations.

Unless the Supreme Court directs otherwise, we will not interpret *Muhammad* to blindly protect lawyers who carelessly advise clients incorrectly about their substantive rights and the effect of a written agreement which is intended to resolve an existing dispute. Because the decision in *Miller v. Berschler, supra,* 423 Pa.Super. 405, 621 A.2d 595, reaches a contrary result, it is expressly overruled. To do otherwise would do a disservice to clients who must rely upon the advice of their lawyers before entering agreements involving future obligations and also to careful and conscientious practitioners who undertake to advise their clients fully before the client is asked to execute an agreement, whether simple or complex, and who protect their clients, or at least advise them, against contractual provisions which impose more onerous burdens than the substantive law requires.

Whether the lawyers in this case were negligent in fact is not now for us to decide. We hold only that the complaint was adequate to withstand the summary granting of judgment in response to preliminary objections in the nature of a demurrer.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

DEL SOLE, J., files a Concurring Statement.

CAVANAUGH, J., files a Dissenting Opinion in which CIRILLO, POPOVICH and HUDOCK, JJ. join.

DEL SOLE, Judge, concurring.

I join the Majority in its interpretation of the Supreme Court's holding in *Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346 (1991), and agree that this case should be remanded to the trial court.

This matter is before us on appeal of a Order sustaining preliminary Objections to the Plaintiff's Complaint. Having reviewed that Complaint, I conclude that the Plaintiff has not plead a cause of action upon which relief could be granted.

The Plaintiff's claim is based on the fact he is paying alimony to his former wife as a result of a property settlement agreement, even though she has remarried. The basis of the claim, as contained in his Complaint, is as follows:

33. At all times relevant hereto, Mr. McMahon was aware of the fact that his wife might re-marry. However, it was not until after his wife remarried that defendants advised Mr. McMahon that his obligation to support his wife could be terminated.

34. Defendants failed to provide for court intervention concerning Mr. McMahon's alimony agreement by failing to specifically provide for the same in the March 31, 1987 agreement as amended by the December 4, 1987 agreement and by not merging the agreement as worded with the final decree.

. . . .

38. Defendants' conduct in failing to merge Mr. McMahon's alimony agreement with a final divorce decree was a breach of defendants' duty to exercise reasonable care, skill and diligence on Mr. McMahon's behalf.

39. As a result of defendants' negligent failure to merge Mr. McMahon's alimony agreement with the final divorce decree, Mr. McMahon sustained injury and Loss. . . .

Nowhere in the complaint does the Appellant allege that he received incorrect or insufficient legal advise upon which he relied before signing the agreement. He does not claim that he was misled about the agreement's terms, or about the

effects of remarriage on alimony. Rather, the language of the agreement provided that alimony would be paid for a defined period.

Normally, when an appellate court concludes a trial court decision is correct, but for a reason different than that advanced by the trial judge, the appellate court would affirm. However, in this case, while I conclude that the plaintiff has not stated a cause of action, because the trial court decided no cause of action could be averred, he was not given an opportunity to amend his complaint. I believe on remand the court should address paragraphs 3 and 4 of the Defendant's Preliminary Objections, and determine if the complaint is sufficient or if Plaintiff should be permitted to amend.

CAVANAUGH, Judge, dissenting.

I most respectfully dissent. I see the threshold issue before us as a question different from the one posed by the majority at the outset of its opinion.

Should the superior court undertake to substantially modify the policy adopted in a supreme court decision where there is no principled rationale for distinguishing the case from the supreme court decision and where the effect is to overrule or abrogate a series of decided cases which have been promulgated and published in the four-year interim between the supreme court decision and today's decision?

Although no principle should be less in need of enunciation and repetition, our court has engaged in frequent self-reminders of our duty of obeisance to supreme court opinions. *See Aivazoglou v. Drever Furnaces*, 418 Pa.Super. 111, 613 A.2d 595 (1992) (deferring to our supreme court as policy making court of this Commonwealth); *see also Foflygen v. R. Zemel, M.D.*, 420 Pa.Super. 18, 615 A.2d 1345 (1992); *Preiser v. Rosenzweig*, 418 Pa.Super. 341, 614 A.2d 303 (1992), *allocatur granted*, 535 Pa. 637, 631 A.2d 1009 (1993); *DeFrancesco v. Western Pa. Water Co.*, 329 Pa.Super. 508, 478 A.2d 1295 (1984); *Commonwealth v. Edrington*, 317 Pa.Super. 545, 464 A.2d 456 (1983). Of course, the supreme court has not hesitat-

ed to remind our court of its confines when it felt that our court had stepped beyond its proper boundaries. See two cases decided the same day: *Municipal Publications, Inc. v. Court of Common Pleas; Appeal of Edgehill,* 507 Pa. 194, 489 A.2d 1286 (1985) and *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985).

In *Miller v. Berschler,* 423 Pa.Super. 405, 621 A.2d 595 (1993) we examined the applicability of *Muhammad v. Strassburger, et al.,* 526 Pa. 541, 587 A.2d 1346 (1991) to a case involving circumstances similar to the instant matter and opined:

> We find the appellant's argument unpersuasive. *Muhammad,* speaking in straightforward terms, bars litigants who have entered a settlement agreement from subsequently maintaining a suit against their attorney for legal malpractice unless fraud is alleged in the inducement of the agreement. While it may be argued that this is a fundamentally problematic holding, we are obliged to follow the pronouncements of our highest court. *See e.g., Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985) ("The formal purpose of the Superior court is to maintain and effectuate the decisional law of [the Supreme] Court as faithfully as possible.")
>
> ... the Supreme Court *sua sponte* promulgated a rule affording attorneys broad protection in malpractice cases.
>
>> Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which the plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when the client has agreed to a settlement. Rather, only cases of fraud should be actionable.
>
> *Id.,* 526 Pa. at 546, 587 A.2d 1346. The court gave the following rationales for this rule: the court declared that the essence of settlement is contractual in nature, and similar to a contract, the time for questioning whether a settlement agreement is advantageous is before settlement,

*id.* at 547–548, 587 A.2d at 1349; the contract principle of *caveat emptor* applies similarly to settlements, so that a person entering into a settlement agreement is locked into whatever compromise he agreed to once the settlement becomes effective, *id.* at 548, 587 A.2d at 1349; the Court found that overriding principles of public policy supported its result, as lawyers might be reluctant to settle a case if they feared a client might later find a way to sue them for something that " 'cold have been done, but was not,' " *id.* at 548, 587 A.2d at 1349; the court was concerned with the lack of finality and delay in already overcrowded courts and believed: "we [the court] should view 'litigation concerning litigation' cases with a jaundiced eye," *id.* at 549–550, 587 A.2d at 1350; litigation over settlements is of particular concern, because settlement is an essential part of the efficient operation of our judicial system, *id.* at 550, 587 A.2d at 1349; and finally, there are distinct societal advantages to a judicial system which is not adversarial in nature but attempts to resolve disputes by compromise or concession, *id.* at 551–552, 587 A.2d at 1351.

It appears that, given the broad policy rationales employed by the Supreme Court and the unqualified articulation of its "simply stated" holding, *Muhammad* proclaims a clear, bright line rule which, absent fraud, shields attorneys from legal malpractice claims sounding in negligence or contract where they involve cases concluded by completed settlement.

*Miller v. Berschler,* 423 Pa.Super. 405, 406–07, 408–09, 621 A.2d 595, 596, 597.

The dissent in *Miller* argued that Muhammad should be limited cases where the dispute was as to the amount of money involved in the settlement.

The present majority conspicuously fails to refer to any language in the supreme court opinion which would suggest that the *Muhammad* decision should be interpreted as it is today. Although the majority twice suggests revisitation to the "amount" of dollars as a basis for distinction, the court later would draw the line between *Muhammad* and cases

where there was a failure to advise a client about well-established principles of law and the "impact on future obligations" or, as declaratively stated by the majority, where there is a "deficiency in the lawyers exercise of his or her professional judgment". If these statements (which could well be used as a definition of all legal malpractice) are to be taken as the basis for differentiation from *Muhammad*, it is clear that the majority not only improperly limits *Muhammad*, but that our court has now in fact nullified the policy enunciated by our supreme court.

Thus, the majority opinion not only emasculates *Muhammad* but, also it overrules or effectively overrides, four published decisions of this court which followed the reasoning and policy of *Muhammad*. These decisions which involve nine judges of this court, are but a part of the hegemony which may reasonably be attributed to the pivotal decision by our highest court.[1] For example, we do not know the number of unpublished memoranda by our court which have applied the immunity policy or the number of cases in the trial courts[2] which have applied *Muhammad* in its literal terms or followed the authorities discussed above which have now been virtually discountenanced. Nor can we measure the effect that *Muhammad*, as previously applied by our cases and its own broad language, has had upon counsel and their advice to prospective litigants previous to today.

In sum, I would apply the doctrine of *stare decisis* as eloquently described by Judge Rowley:

1. Although the majority undertakes to avoid overruling *in haec verba* *Goodman v. Kotzen*, 436 Pa.Super. 71, 77–79, 647 A.2d 247, 250 (1994); *Spirer v. Freeland & Kronz*, 434 Pa.Super. 341, 344–46, 643 A.2d 673, 675 (1994) and *Martos v. Concilio*, 427 Pa.Super. 612, 629 A.2d 1037 (1993), they are in fact indistinguishable and a reading of the majority opinion discloses that there is no reasoned basis upon which these opinions may be distinguished from *Muhammad* or *Miller*. These cases all followed the supreme court's decision in *Muhammad* and do not provide any support for the reasoning of the present majority.

2. See for example, *Phelps v. Williams* (No. 83–5499–14–2 C.C.P. Bucks Co., Oct. 30, 1991); *Estate of Andrews v. Newman* (no. 88–06167 C.C.P. Montgomery Co., Oct. 8, 1991); *Dries v. Holko* (No. 86–C–1942 C.C.P. Lehigh Co., Sept. 27, 1991) (bench opinion).

Furthermore, it is not necessary to us to explore the extent and impact of a particular analysis. Such determinations are the prerogative of the Supreme Court of Pennsylvania. Rather, we are compelled to follow the Supreme Court's decision in *Carrender [v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983)] in factual situations of the same class, which we find the present case to be. Where the Supreme Court has spoken on a particular subject, it is our obligation, as an intermediate appellate court, to follow and apply that decision so as to establish some measure of predictability and stability in our case law. In the absence of a legally relevant distinction between the facts of a previous case and the case before us, we are obliged to follow the dictates of the Supreme Court's decision in the prior case. Resolving cases by attempting to create irrelevant, factual distinctions impedes application of the doctrine of *stare decisis*, the principal function of which is to imbue the judicial system with some measure of predictability and stability, and places the development of the law in a constant, uncertain state of flux such that neither practitioners nor trial judges can, with any degree of predictability, determine the proper application of the law to each new case involving similar facts that comes before them. It also is not our prerogative to apply different methods of analysis where our Supreme Court has made clear which particular analysis it believes should be applied to a particular situation.

*Malinder v. Jenkins Elevator & Mach. Co.*, 371 Pa.Super. 414, 421–22, 538 A.2d 509, 513 (1988).

Or, on an earlier day by Mr. Justice Paxson:

It was admitted by the learned counsel for the plaintiff, that the current of authority was against his view of the case, and we were urged to review the previous decisions of this court and recast them in harmony with the state of public opinion at the present day. We see no reason why the law should change to suit the barometer of public opinion. On the contrary, we see many reasons why it should not. And especially are we not disposed, for such

reason, to overturn a long line of cases, solemnly decided, which have, to some extent, become rules of property, and upon the faith of which investments have been made and rights have grown up. It is our duty to apply the maxim *stare decisis.*

*Struthers v. Dunkirk, Warren & Pittsburgh Rwy. Co.,* 87 Pa. 282, 286 (1878) (cited in Black's Law Dictionary 4th Edition 1976–*Stare Decisis*).

Respectfully, I would conclude that the present case is controlled by the holding in *Muhammad v. Strassburger, et al.;* and also that the new rule adopted by the majority is artificial, unworkable, and not based on any principled distinction attributable to the supreme court decision and, accordingly, I, therefore, Dissent and would Affirm the order of the trial court.[3]

CIRILLO, POPOVICH and HUDOCK, JJ., join.

---

**3.** Of course, the application of the *Stare decisis* doctrine does not preclude judicial statements which, while recognizing the governance of a supreme court majority, undertake to question the practical wisdom of the holding. The present rule is an example. See dissent in *Muhammad* ("It's Christmastime for Pennsylvania Lawyers") and concurrence in *Gordon* ([the immunity granted in *Muhammad* is] "well nigh absolute" [and may be an unmerited shield]).