# Abeln v. Eidelman

C.P. of Lehigh County, No. 2009-C-6037

*Richard L. Caplan*, for plaintiff.
*Arthur W. Lefco*, for defendant.

FORD, *J.*, November 8, 2013—This is a legal malpractice case in which plaintiff/appellant, Paul J. Abeln, brought suit against defendant/appellee, Attorney Richard Huntington Pepper, and attorney Mary J. B. Eidelman who is not a party to this appeal before the Superior Court of Pennsylvania. I granted defense motions for summary judgment dismissing the claims against both attorney defendants. Appellant Abeln filed the present appeal from my granting the motion for summary judgment in favor of appellee Pepper.

## Case History

This legal malpractice action arises from a custody case, *Paul J. Abeln v. Heidi C. Noll*, Lehigh County number 2007-FC-0427 ("the custody case"). In this malpractice suit, appellant claims that each of the attorney defendants by their consecutive representation in the custody case was responsible for diminishing through court orders his custody rights to Paul Christopher Abeln, the child that he has with Heidi C. Noll ("mother").

Appellant commenced this malpractice suit on

November 13, 2009, by filing a praecipe for writ of summons. Thereafter, appellant filed a complaint on January 22, 2010. After discovery, each attorney defendant filed a motion for summary judgment on September 1, 2011. I granted the motions for summary judgment in favor of the attorney defendants and against appellant on January 25, 2012. The judgment were not appealable at that point because appellee Pepper had an unresolved counterclaim for counsel fees filed under this same case number.

On November 6, 2012, I entered an order granting attorney Eidelman's uncontested motion to sever the malpractice claim brought against her from the malpractice claim brought against appellee Pepper. Appellant Abeln filed a notice of appeal to the Superior Court from the January 25, 2012, order granting summary judgment in favor of attorney Eidelman. That appeal is pending at Superior Court docket number 1978 EDA 2013.

On September 6, 2013, judgment was entered in favor of appellee Pepper and against appellant on Pepper's counterclaim for counsel fees which Pepper filed in response to appellant's malpractice complaint. On September 10, 2013, appellant appealed the judgment on the counterclaim and the summary judgment in favor of appellee Pepper on the malpractice allegations. This is the present appeal and it is assigned Superior Court docket number 2573 EDA 2013. In an order dated November 1, 2013, the Superior Court consolidated the two appeals.

On October 1, 2013, in response to an earlier order, appellant filed a statement under Pa.R.A.P. 1925(b) ("Concise Statement") in which he sets forth four numbered claims of error in the present appeal at 2573

EDA 2013. Each challenges the granting of summary judgment for appellee Pepper.

## Discussion and Conclusion of Law

To properly evaluate appellant's claims of error, it is necessary to understand the history of appellee Pepper's representation of appellant in the underlying custody case.

Appellant's first attorney in the custody case was defendant, attorney Eidelman. Appellant retained attorney Eidelman on March 29, 2007. With that attorney's assistance, appellant Abeln obtained two agreed interim orders for custody of his son.

On November 16, 2007, appellant first consulted appellee Pepper. (Paragraph 21, complaint.) On the same date, "appellant fired Eidelman as his attorney for incompetence, via email, and asked her to request a continuance of the (custody) trial (scheduled for November 19, 2007) and to contact his new attorney, (appellant) Pepper, prior to [the custody trial]." (Paragraph 24, complaint.) Despite this last statement, appellant did not execute a written retainer agreement with appellee Pepper until December 3, 2007. (Paragraph 32, complaint.)

On November 19, 2007, when the case was called for trial, the court excused defendant Eidelman from further representation at appellant's request. Appellee Pepper, who was not yet retained and was only first consulted on the Friday before this Monday court date, did not appear in court on November 19. By agreement, the trial was continued to January 22, 2008. Mother, through her attorney, indicated she was prepared on November 19 to proceed to trial, but the court gave appellant the opportunity to secure the services of Pepper for the

trial. Appellant, acting *pro se*, agreed to another interim custody arrangement whereby he and mother would share legal and physical custody of Paul Christopher. (Appellant subsequently sued defendant Eidelman under the present case number alleging she committed malpractice and was responsible for the terms of this order agreed by appellant even though Eidelman had been fired as counsel before this agreed order was entered.)

Appellant Abeln and mother appeared in court on January 22, 2008, for the rescheduled trial. Appellee Pepper represented appellant Abeln and mother also had counsel. Another agreed order was entered. This is the order which appellant attributes to malpractice by appellee.

Under this agreed order, the parents shared legal custody of Paul Christopher. Mother was designated as the primary physical custodian. Appellant was given partial custody rights. The lengthy agreement of the parties was set forth on the record before the Honorable Maria L. Dantos on January 22, 2008. At one point during the presentation of the agreement, there was an interruption when appellant Abeln and appellee Pepper spoke privately. At a later point during the proceedings, appellant, through Pepper, clarified that the parties would be following, in regard to counseling and a parenting coordinator, recommendations found in a written custody evaluation made part of the record that date and prepared by a psychologist, Doctor Phillip Nastasee. Appellee Pepper stated that appellant was noting his disagreement with other significant aspects of Doctor Nastasee's report. Doctor Nastasee's report resulted from an agreement of the parties made months earlier that they would pay him to do a custody evaluation of this family. Both parents stated their agreement to the terms of the custody arrangement reached on January 22,

2008, in response to questions by Judge Dantos before she entered the agreed order which resolved all issues for which trial was to be conducted. Appellant perceived the Nastasee report as unfavorable to him. He claims in the present suit that appellee Pepper was professionally negligent in not challenging the Nastasee report at the January 22, 2008, trial. Specifically, appellant contends that Pepper should have hired an opposing psychologist to critique the Nastasee report. Instead, according to appellant, "Pepper recommended to Abeln that they exploit a strategy of delay to allow the [r]eport to become stale and then request a new evaluation." Appellee Pepper, with appellant's consent, followed through on this strategy by filing a petition for modification of custody on March 11, 2008, and by filing the "Petition for psychological and mental examination of parties" on September 16, 2008.

In this petition for a second evaluation, appellee Pepper asked that the court direct the parties to undergo a psychological evaluation by Steven E. Samuel, Ph.D., Appellee Pepper filed a memorandum in support of his petition. Pepper represented appellant Abeln at the October 8, 2008, hearing on the petition. Pepper brought Doctor Samuel to the hearing. No one testified at the hearing over which I presided. I granted the petition for the second evaluation based on the arguments of counsel.

On October 16, 2008, mother, acting *pro se*, filed a motion for reconsideration of the order setting up the evaluation by Doctor Samuel. After argument on this motion, I entered an order dated November 13, 2008, granting reconsideration. In that order, I rescinded the order of October 8, 2008, so that mother and appellant Abeln were no longer compelled to undergo an evaluation by Doctor Samuel. I indicated that the October 8, 2008, order

"is rescinded without prejudice to plaintiff (appellant) to renew his motion for psychological evaluation at the appropriate time during the trial in this case."

On January 28, 2009, I entered an order granting appellee Pepper's petition to withdraw as counsel for appellant Abeln. According to paragraph 3 of the petition, appellant had not paid appellee for services rendered and appellant and appellee had philosophical differences about the handling of the custody case. On February 13, 2009, Attorney Stephen J. Anderer entered an appearance on behalf of appellant.

Mother filed a petition for relocation to Arizona on January 16, 2009. That and appellant's petition for modification were heard at the trial which was conducted in March and April, 2009, before me. Attorney Anderer represented appellant at that custody trial. Mother was also represented by counsel at the trial. Attorney Anderer, in his trial preparation and at trial, did not renew the request for an evaluation of the parties by Doctor Samuel. On May 18, 2009, after trial, I entered an order mandating that appellant Abeln and mother jointly share legal custody and equally exercise physical custody of their child.

With the above history in mind, I now turn to the four allegations of error raised by appellant in his concise statement.

In the first allegation of error, appellant Abeln argues that I improperly granted summary judgment in favor of Pepper under the *Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346 (1991), and *McMahon v. Shea*, 441 Pa. Super. 304, 657 A.2d 938 (1995) cases. I found that, as a matter of law, summary judgment had to be entered for appellee Pepper because the alleged negligent conduct

against Pepper stemmed from the custody order of January 22, 2008, entered with appellant's agreement without any evidence of coercion or other improper action by Pepper. My decision was correct.

This is appellant's allegation against appellee Pepper that appellee forced him to reach an agreement embodied in the January 22, 2008, order which cut into appellant's custody time with his child:

> Pepper unfairly pressured Abeln into accepting an unfavorable settlement, of the custody issue that would otherwise have been resolved at trial, by both failing to adequately prepare to effectively advance Abeln's interests at the trial and by repeatedly advising him that, in the absence of a settlement, the tenor of the (Nastasee) report and the inexperience of the judge virtually guaranteed that Abeln would lose what little physical custody of Paul he and his son enjoyed.

(Paragraph 66(c), complaint.)

As a general rule, a litigant is not permitted to agree to a settlement and subsequently bring a malpractice suit against his attorney based on the terms of the settlement. *Muhammad v. Strassburger*, 526 Pa. 541, 546, 587 A.2d 1346, 1348 (1991). The Superior Court has held that *Muhammad* precludes a malpractice action where a settling client merely alleges that settlement resulted from "a deficiency in the lawyer's exercise of his or her professional judgment." *McMahon v. Shea*, 441 Pa. Super. 304, 313, 657 A.2d 938, 942 (1995). Conversely, a malpractice suit stemming from a settlement may proceed where a litigant shows that the settlement resulted from fraud or from the attorney's failure to correctly explain legal principles or the consequences of the settlement to

the litigant. *Id.*

In the evidence presented through discovery, appellee Pepper, upon review of the Nastasee report, concluded that father would attain a more favorable custody arrangement through settlement than through trial. Instead of directly attacking the Nastasee report, Pepper advised appellant that the better course of action was to reach a custody arrangement with mother at the scheduled trial on January 22, 2008, allow the Nastasee report to lose its effect over time, work on personality issues through therapy, secure a second evaluation of the parties and then attempt to get a better custody arrangement in a subsequent proceeding. Appellant accepted this strategy and then appellant and appellee worked to implement it.

Appellant Abeln now contends that the January 22, 2008, agreed order resulted from Pepper's flawed strategy of not impeaching the Nastasee report, pursuing the settlement option and then bringing litigation later once a more favorable psychological evaluation was obtained. Appellant does not allege that he entered the January 22, 2008, agreement as a result of fraud or Pepper's failure to correctly explain to him the pertinent legal principles or the consequences of the agreement. While appellant contends that he was coerced into the agreed order, examination of the evidence developed through discovery reveals that appellant is actually claiming "a deficiency" in Pepper's "exercise of his professional judgment" in pursuing one litigation strategy over another. As the Superior Court noted in *McMahon v. Shea*, the *Muhammad* rule operates to preclude malpractice suits where a litigant claims his unfavorable settlement resulted merely from his lawyer's exercise of professional judgment. Thus, these malpractice claims asserted by appellant are precluded as a matter of

law.

Further, appellant gave his informed consent to the agreement entered on January 22, 2008. The record from the hearing reveals a setting forth of the specifics of the custody agreement. At one point, as the agreement was being set forth, appellant interjected his comment that he felt the transportation provisions for Paul Christopher were too broadly stated and that there was conflict in the transportation provisions. N.T., 1/22/08, p.7. Later in the hearing, appellant responded to a question by the judge that he understood provisions regarding any planned removal of the child from Pennsylvania. N.T., 1/22/08, p.20. Finally, appellant gave his approval to the custody provisions put on the record by the attorneys. N.T., 1/22/08, p.23.

Appellant's statement in his complaint (paragraph 66(c)) that he was "unfairly pressured" by Pepper to enter into the January 22, 2008, agreement is contrary to appellant's email to appellee Pepper dated December 20, 2007. In it, appellant stated to Pepper: "If you are successful in getting Zamborsky (mother's attorney) & Heidi to discuss a custody arrangement, I would consider Heidi having title of primary physical custodian with the following visitation schedule (which father then set forth)." (The December 20, 2007, email is attached to appellee Pepper's motion for summary judgment as exhibit G. Appellant admitted sending this email in paragraph 20 of his reply to Pepper's motion for summary judgment filed on September 29, 2011.) Also, in a statement which is part of a document that appellant prepared entitled "self report progress note, dated February 20, 2008," appellant wrote:

I made the hardest decision of my life on 1/22/08 by

offering Heidi the title of primary physical custodian, not because she was deserving of it but because I hoped that by giving her what she craved most, that she would stop the hostile actions and start to cooperate in a civil, responsive manner that is in the best interests of our son.

(The progress note is attached as exhibit S to appellee's October 24, 2011, "motion to supplement summary judgment record" (supplemental motion). Appellant has confirmed the progress note is authentic. *See* exhibit 1 to the supplemental motion.

Appellant further demonstrated that the January 22, 2008, agreement was his agreement with his testimony on March 24, 2009, during the custody trial, in the following exchange:

Q: And why did you agree to the order (stipulated order of January 22, 2008)?

A: Because I was very concerned about Nastasee's report having so many problems with it. I was concerned that I was going to have a worse — I was not going to see my son at all. And I had hoped that if I had given Heidi what she was craving, that the hostility and aggressiveness towards me would end, and that she would enable us to start co-parenting in the best interest of our son. And I had hoped, based on the terms of that agreement, that we would be able to use co-parent counseling and a parenting coordinator to resolve differences and get on better grounds so that in fact we would maximize the amount of time that both of us shared with our son.

N.T., 5/24/09, p.110.

Thus, under the authority of *Muhammad* and *McMahon*, I properly entered summary judgment for appellee Pepper.

In his second allegation of error, appellant claims that I ignored his "credible evidence in the record" supporting the malpractice claim so that the granting of summary judgment was not proper. As to the evidence I supposedly ignored, appellant points to "the professional opinion of a qualified legal malpractice expert." This is a reference to Richard A. Katz, Esquire, who authored an opinion letter dated April 29, 2011. The August 29 letter refers to a March 4, 2010, letter by attorney Katz. This earlier letter does not appear to be part of the record. Appellant also refers to "Pepper's admissions in deposition" which are not specified in the concise statement. Finally, he refers to appellant's own testimony that Pepper's failure to adequately prepare for a custody trial wrongfully prevented him from exercising meaningful discretion" to choose a trial over the settlement of January 22, 2008. There is also no specificity given as to the fashion in which appellee Pepper supposedly failed to adequately prepare for trial although the concise statement, taken as a whole, does make it clear that appellant faults appellee Pepper for not preparing a critique of the Nastasee report.

I have already commented on appellee Pepper's advice not to attack the Nastasee report. That entire subject falls under the strategy advice provided by Pepper to appellant and accepted by appellant. As I have already explained, as a matter of law, that strategy decision by Pepper cannot be used as a basis for this malpractice claim after it resulted in the agreed order of January 22, 2008. The remainder of these allegations in appellant's second claim of error are not specific. I do not know to what aspects of the legal malpractice expert's reports appellant is referring and to

what alleged lack of trial preparation appellant is referring beyond the Nastasee issue. Moreover, all of the legal malpractice expert's opinions and appellant's preserved issues appear to go back to the Nastasee issue.

In the third claim of error, appellant complains that the court's erroneous ruling in granting summary judgment in favor if appellee Pepper wrongfully deprived him "of his only viable defense to Pepper's counterclaim for attorney's fees." The counterclaim was heard at an arbitration at which no record was made. However, if the court properly granted summary judgment in favor of Pepper, then there is no substance to this allegation of error and it should be denied.

The final allegation of error reads:

Did the trial court err in finding no negligence in Pepper's failure to offer testimony of a qualified psychologist, with knowledge of Abeln's wife's past performance on certain probative psychological tests, to support Abeln's motion to have the mental stability of his wife evaluated in order to gain primary physical custody of his child?

A response to this requires a summary of what I have already stated. The psychological evaluation completed by Doctor Nastasee before the January 22, 2008, agreed order resulted from the decision by appellant Abeln and mother to jointly pay for and cooperate in the completion of that report. Second, there was the strategic decision recommended by and then made by Abeln not to have a second psychological report completed before the January 22, 2008, agreed order. Third, appellant Abeln, agreeing with the advice of appellee Pepper, waited a number of months following the agreed order and then filed a motion

asking the court for a second psychological evaluation to be conducted by Doctor Samuel. The court initially granted that request and then rescinded the authorization for it against the wishes of both appellant and appellee. Fourth, attorney Anderer, with whom appellant Abeln apparently has no problem in regard to representation, did not resubmit a request for a second psychological evaluation at any point before or during the trial that occurred in March and April of 2009, despite being given the opportunity to request a second psychological evaluation by the court when it rescinded the authorization for the evaluation by Doctor Samuel. The trial in 2009, where no additional psychological evidence was presented, yielded a result that appellant acknowledges was acceptable to him. Thus, there is no factual dispute that appellant Abeln was able to secure a result acceptable to him in terms of custody with his son without any second psychological evaluation.

As the fact-finder and the judge who made the decision at the trial in March and April of 2009, far too much weight is placed by appellant Abeln on the effect that Doctor Nastasee's report and testimony had at any point. This was perhaps best demonstrated by the result of the trial conducted in March and April, 2009. With these factors in mind, as a matter of law, there can be no merit to the claim that appellee Pepper was negligent for failing to go beyond what he did to secure a second psychological evaluation.

Because the granting of summary judgment in favor of appellee Pepper and against appellant Abeln was proper, this appeal should be denied.