J. A20010/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| PAUL J. ABELN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MARY J.B. EIDELMAN, ESQUIRE AND | : | No. 1978 EDA 2013 |
| RICHARD HUNTINGTON PEPPER, | : | |
| ESQUIRE | : | |

Appeal from the Order, June 26, 2013,
in the Court of Common Pleas of Lehigh County
Civil Division at No. 2009-C-6037

| PAUL J. ABELN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MARY J.B. EIDELMAN, ESQUIRE AND | : | No. 2573 EDA 2013 |
| RICHARD HUNTINGTON PEPPER, | : | |
| ESQUIRE | : | |

Appeal from the Judgment Entered September 6, 2013,
in the Court of Common Pleas of Lehigh County
Civil Division at No. 2009-C-6037

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED JANUARY 23, 2015**

In these consolidated appeals, appellant challenges the June 26, 2013

order which entered summary judgment against him in his legal malpractice

actions against two lawyers who represented him in his divorce and child custody proceedings.[1]   According to appellant, the negligent representation of these two attorneys resulted in diminished custody of his child.   We affirm.

Appellant raises the following issues on appeal:

A.    Controlling precedents of both this Court and the Pennsylvania Supreme Court leave no doubt that the Trial Court erred in granting summary judgment to Eidelman on grounds that Abeln's malpractice claims were legally barred by his acceptance of a brokered child custody settlement.

B.    Whether, at the time that Abeln agreed to the November 2007 custody settlement, Eidelman was still his attorney is of absolutely no consequence to the viability of his legal malpractice claims against her.

C.    The Trial Court erred in concluding that "there was no evidence [in the record] * * * of pressure or of anything improper by Appellee Eidelman to show that [Abeln] was forced or tricked into accepting the custody arrangement in the November 19 [2007] agreed [custody] order."

D.    The Trial Court erred in concluding, in reliance upon a nonprecedential Supreme Court decision and dictum in a case of this Court, that, because Abeln followed Pepper's advice,

---

[1] The other order under appeal is a September 6, 2013 order granting Attorney Pepper's counterclaim for counsel fees.   A prior appeal of the summary judgment in favor of Attorney Eidelman was quashed by this court on April 10, 2013, as interlocutory, apparently because this counterclaim was still pending.   The September 6, 2013 order concluded all actions against all parties and has rendered the prior June 26, 2013 order final and now appealable.

> to submit to a negotiated rather than adjudicated determination of his child custody rights as part of a broader litigation strategy, Pepper's exercise of professional judgment legally precludes Abeln's legal malpractice claims against him.
>
> E. Abeln's statements to the Trial Court, to Pepper, or for discussion with his treating psychologist, as to the reasons for his acceptance of the adverse, January 22, 2008 custody stipulation, cannot be deemed binding judicial admissions that permit the Trial Court to conclude, as it did, that Abeln's actions had been voluntary rather than a product of Pepper's negligence, because Abeln's mitigating explanations for these statements, in his deposition testimony, create an issue of fact that only a jury can properly decide.

Appellant's brief at i.[2]

We find no error with the trial court's holding. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the trial court, it is our determination that there is no merit to the questions raised on appeal. The trial court's thorough, 18-page opinion, filed on January 25, 2012, as well as the two separate Rule 1925 opinions filed September 19, 2013, and November 8, 2013, respectively, comprehensively discuss and properly dispose of the questions

---

[2] These issues are taken from the table of contents of appellant's brief. The brief contains a separate page listing the questions presented, but the argument section of the brief follows the issues presented in the table of contents. Consequently, we will regard the table of contents as the statement of issues.

presented.[3]  We will adopt those opinions as our own and affirm on that basis with the following additional analysis.

In Issues A and D, appellant questions the continuing viability of our supreme court's decision in ***Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick***, 587 A.2d 1346 (Pa. 1991), ***cert. denied***, 502 U.S. 867 (1991), which holds that a client cannot maintain a legal malpractice action against an attorney where the client agreed to the settlement of his or her claim unless the settlement agreement was fraudulently induced.[4]  Appellant argues that ***Muhammad*** "has virtually no remaining precedential value,"[5] because the supreme court subsequently restricted the holding in that case to its unique facts, citing ***McMahon v. Shea***, 688 A.2d 1179 (Pa. 1997).

Appellant has greatly exaggerated the effect of the ***McMahon*** decision.  While the ***McMahon*** majority purported to restrict ***Muhammad*** to its facts, we note that the ***McMahon*** "majority" was not even a plurality decision.  Rather, ***McMahon*** was the product of an equally divided, six-member supreme court.  In point of fact, the three-member "minority"

---

[3] Pa.R.A.P., Rule 1925(a), 42 Pa.C.S.A.

[4] Issue A raises this claim as to Attorney Eidelman while Issue D raises it as to Attorney Pepper.  We note that Issue A is waived as this matter was not directly raised or fairly suggested in appellant's statement of matters complained of on appeal pertaining to Attorney Eidelman.  ***See*** Pa.R.A.P., Rule 1925(b)(4)(vii).

[5] Appellant's brief at 27.

concurred in the result, but specifically objected to limiting **Muhammad** to its facts. **McMahon**, 688 A.2d at 1182-1183. Consequently, **McMahon** did not serve to limit **Muhammad** to its facts, and **Muhammad** remains as controlling precedent until a true majority of the supreme court rules otherwise. The trial court correctly found that appellant's malpractice action against Attorney Pepper was barred by **Muhammad** because the Complaint failed to allege fraud in the inducement of the settlement agreement to which appellant consented.

In Issue B, appellant argues that it is of no consequence whether Attorney Eidelman was still representing him at the time of the November 19, 2007 custody hearing. We agree with the trial court that appellant's abrupt firing of Attorney Eidelman on November 16, 2007, insulates her from a claim of legal malpractice predicated upon the consent agreement that issued from the November 19, 2007 hearing.

Much of appellant's complaint against Attorney Eidelman for malpractice stems from a negative psychological evaluation of appellant prepared by Dr. Phillip Nastasee. Appellant argues that Attorney Eidelman was negligent in failing to meet with him and prepare him for Dr. Nastasee's examination, in failing to seek to obtain Dr. Nastasee's work papers, and in failing to obtain an independent psychology expert to counter Dr. Nastasee's report. (Appellant's brief at 32.) First, Attorney Eidelman cannot be deemed negligent for failing to help appellant prepare for a psychological

examination. While Attorney Eidelman may be considered a legal expert, she has no training in psychology and had no expertise to impart to appellant for a psychological examination. Second, as to the other alleged failings as to the Nastasee report, we remind appellant that he and Attorney Eidelman did not receive the Nastasee report until November 14, 2007. When appellant fired Attorney Eidelman only two days later, he rendered it impossible for Attorney Eidelman to take any further remedial actions.

Appellant also asserts that Attorney Eidelman was negligent in preparing, but not filing proposed findings of fact and conclusions of law and in failing to request a continuance of the November 19, 2007 custody hearing. Again, appellant fired Attorney Eidelman three days before the custody hearing, thereby preventing her from taking the aforementioned actions. Moreover, the trial court states in its opinion that Attorney Eidelman was excused from further representation shortly after the November 19, 2007 hearing commenced. (Trial court opinion, 1/25/12 at 4.) The court also indicates that both the court and appellant's wife were willing to continue the hearing until January 22, 2008, so that appellant could secure the services of a new lawyer. (*Id.*) Nevertheless, acting *pro se*, appellant suggested the new custody arrangement of which he now complains. (*Id*.) This is simply not Attorney Eidelman's fault.

Appellant also cites other examples of Attorney Eidelman's negligence such as failing to prepare witnesses he had provided her, and taking a family vacation shortly before the custody hearing. Again, appellant's firing of Attorney Eidelman prevented her from preparing any witnesses. As the trial court indicates in its opinion, the eleventh hour release of the Nastasee report essentially mandated a continuance of the November 19, 2007 custody hearing. (Trial court opinion, 1/25/12 at 9.) Had appellant not fired Attorney Eidelman, presumably the case would have been continued and she could have prepared witnesses for trial. This would also have dissipated any failure to prepare attributable to taking a family vacation.

Finally, we distinguish one of the cases appellant cites in support, *White v. Kreithen*, 644 A.2d 1262 (Pa.Super. 1994), *appeal denied*, 652 A.2d 1324 (Pa. 1994). In *White*, the appellant fired his lawyers in a medical malpractice action because he felt they were not adequately preparing for trial. Appellant alleged in his ensuing legal malpractice complaint that the attorneys subsequently interfered with appellant's ability to secure new counsel by refusing to transfer appellant's file and by demanding unreasonable referral fees. Consequently, appellant had no counsel prior to trial. At a conference before the Calendar Judge, appellant was forced to accept an unfavorable settlement rather than immediately proceeding to trial without counsel.

The focus of the **White** decision was actually its finding that **Muhammad** did not apply to bar appellant's malpractice action because the settlement agreement was not negotiated by appellant's attorneys. We are not finding that **Muhammad** applies to bar the malpractice action against Attorney Eidelman.[6] However, to the extent that **White** suggests that a legal malpractice action may be maintained even where the attorney has been fired and the client subsequently accepts an unfavorable settlement, we note a critical difference with the instant situation. There is no allegation or indication that Attorney Eidelman interfered in any way with appellant's ability to secure new counsel. Moreover, as noted, the trial court stated in its opinion that it was aware that appellant was in the process of obtaining the services of Attorney Pepper and was willing to continue the hearing to afford him the ability to retain Attorney Pepper. Appellant's decision to enter the new custody settlement at that time without counsel was purely of his own volition and cannot be attributed to any negligence or intentional interference by Attorney Eidelman.

Accordingly, we will affirm the orders entering summary judgment against appellant and entering judgment against appellant as to Attorney Pepper's counterclaim.

Order of June 26, 2013 affirmed.

Judgment of September 6, 2013 affirmed.

---

[6] As noted earlier, that issue was waived.

J. A20010/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2015



ADD28

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CIVIL DIVISION

PAUL J. ABELN,

      Plaintiff           :      No. 2009-C-6037

      v.                :      (Superior Court No. 1978 EDA 2013)

MARY J. B. EIDELMAN, ESQUIRE, and
RICHARD HUNTINGTON PEPPER,
ESQUIRE,

      Defendants



* * * * * * * *

Appearances:

      Richard L. Caplan, Esquire,
          on behalf of Plaintiff/Appellant, Paul J. Abeln

      Paul C. Troy, Esquire,
          on behalf of Defendant/Appellee, Mary J. B. Eidelman, Esquire

* * * * * * * *

WILLIAM E. FORD, JUDGE

### Pa.R.A.P. 1925(a) O P I N I O N

This is a legal malpractice case in which Plaintiff/Appellant, Paul J. Abeln, brought suit against Defendant/Appellee, Attorney Mary J. B. Eidelman, and Attorney Richard Huntington Pepper who is not a party to this appeal. I granted defense motions for summary judgment dismissing the claims against both attorney defendants. Appellant Abeln filed the present appeal from my granting the motion for summary judgment in favor of Appellee Eidelman.

114

ADD29

The basis for this legal malpractice action is custody case, *Paul J. Abeln v. Heidi C. Noll*, Lehigh County number 2007-FC-0427 ("the custody case"). In this malpractice suit, Appellant claims that each of the attorney defendants by their consecutive representation in the custody case was responsible for diminishing through court orders his custody rights to Paul Christopher Abeln, the child that he has with Heidi C. Noll ("Mother").

Appellant Abeln presents several arguments in this appeal in support of his position that I mistakenly entered summary judgment against him in favor of Appellee Eidelman. Each of his contentions lacks merit.

Pertinent Procedural History

This malpractice suit was brought on November 13, 2009. After discovery, each attorney defendant filed a motion for summary judgment on September 1, 2011. I granted the motions for summary judgment in favor of the attorney defendants and against Appellant on January 25, 2012. The judgments were not appealable because Attorney Pepper, who is not involved in this appeal, had an unresolved counterclaim for counsel fees filed under this same case number. (On September 6, 2013, judgment was entered in favor of Attorney Pepper and against Appellant on the counterclaim. Appellant appealed that judgment on the counterclaim and the summary judgment in favor of Attorney Pepper on September 10, 2013, which appeal has not yet been assigned a Superior Court docket number.)

On November 6, 2012, I entered an order granting Appellee Eidelman's uncontested motion to sever the claim brought against her from the claim brought against Attorney Pepper.

2

ADD30

On December 5, 2012, Appellant Abeln filed a notice of appeal to the Superior Court of Pennsylvania "from the Order entered in this matter on the 25[th] day of January, 2012, granting summary judgment in favor of the defendant, Mary J. B. Eidelman." This appeal received the Superior Court docket number 3368 EDA 2012.

Because of the November 6, 2012, severing of the claims brought against Appellee Eidelman from the claims brought against Attorney Pepper, it appears that the appeal docketed at 3368 EDA 2012 was a timely challenge to the summary judgment granted in favor of Appellee Eidelman on January 25, 2012. Any appeal of the summary judgment before the severance order would have been interlocutory.

**Unfortunately, in my Memorandum to the Superior Court filed on January 22, 2013, I gave the Superior Court incomplete information about the record in the lower court to that point. I failed to mention and then address the significance of the severance order of November 6, 2012. Perhaps guided by my Memorandum, the Superior Court quashed this appeal "*sua sponte* as interlocutory" by order dated April 10, 2013. I now believe that Appellant was entitled to a substantive review by the Superior Court of the summary judgment order in his earlier appeal. To correct this error, which I probably am responsible for creating, I respectfully suggest that there should be a substantive review by the Superior Court in the present proceedings.**

Unnecessary events in the trial court followed the dismissal as interlocutory of Appellant's earlier appeal. A redundant judgment was taken by Appellee Eidelman on June 7, 2013. It was redundant because the summary judgment entered on January 25, 2012, was a final order as to Appellee Eidelman after entry of the November 6, 2012,

3

severance order. *See Feidler v. Morris Coupling Co.*, 784 A.2d 812 (Pa.Super. 2001).

There was an unsuccessful effort to set aside the redundant judgment which ended with an

order on June 28, 2013. Appellant then filed the current notice of appeal on July 5, 2013,

from the order granting summary judgment for Appellee Eidelman. This current appeal

received the present Superior Court docket number 1978 EDA 2013.

On July 24, 2013, in response to an earlier order, Appellant filed a statement under

Pa.R.A.P. 1925(b) ("Concise Statement"). In his Concise Statement, Appellant alleges

five errors. They cover the same subjects that were raised in the December 5, 2012, notice

of appeal. I now address each allegation in the Concise Statement.

### The Granting of Summary Judgment

The first claim of error is the essence of this appeal. It reads:

> Did the trial court err in granting summary
> judgment to Eidelman (Appellee) upon Abeln's (Appellant)
> legal malpractice and breach of contract claims, on grounds
> that (i) Eidelman no longer represented Abeln, when Abeln
> accepted a reduced share of physical custody of his only
> son, and (ii) Abeln, as a *pro se* litigant, approved an
> unfavorable, negotiated child custody agreement, when
> there is ample evidence in the record that this interim
> settlement agreement was forced upon Abeln by
> Eidelman's professional negligence, while still his
> attorney?

According to Appellant, it was improper for the court to grant summary judgment

for Appellee Eidelman on the legal malpractice claim against her because she was

responsible for diminishing Appellant's custody time with his child through the agreed

order of November 19, 2007. Summary judgment was properly granted in favor of

Appellee Eidelman for two reasons. First, as the record establishes, Appellee Eidelman

4

ADD32

had been dismissed as Appellant's counsel before the Appellant, acting *pro se*, reached the November 19, 2007, agreement with Mother. Second, the record established that the November 19, 2007, agreed order was entered knowingly and voluntarily by Appellant. There was nothing in the record to establish that "this interim settlement agreement was forced upon (Appellant) Abeln by (Appellee) Eidelman's professional negligence, while she was still his attorney" despite Appellant's contention that it was forced on him.

Appellant hired Appellee Eidelman as his attorney on March 29, 2007, to pursue a divorce from Mother and to obtain physical and legal custody of the child, Paul Christopher. Appellee Eidelman filed the custody case on March 30, 2007.

On March 24, 2007, Mother secured an order from a magisterial district judge against Appellant under Pennsylvania's Protection from Abuse Act (PFA) at an *ex parte* hearing. Under the terms of that order, Appellant was evicted from the marital residence in Lehigh County. The order provided that it would expire at the end of the next business day unless further action was taken by Mother. Mother permitted the *ex parte* order to expire. However, after Mother secured the *ex parte* order, without notice to Appellant, she took the child, Paul Christopher, with her to Arizona where she had lived before the marriage.

On April 5, 2007, Appellee Eidelman filed a petition for emergency relief under the custody case number on behalf of Appellant. In the petition, Appellant sought the immediate return of Paul Christopher to Pennsylvania. Appellant also sought "temporary primary physical custody" of Paul Christopher.

On the same date, April 5, 2007, at a hearing in Lehigh County Court with Appellee Eidelman and both parents present, the petition for emergency relief was resolved by agreement. Under the agreement, Appellant was made the primary physical custodian

ADD33

of Paul Christopher. Mother was given visitation with the child for a minimum of three hours per day. The parties agreed that these provisions would be temporary. Additionally, Mother indicated she would withdraw a protection from abuse case she had filed in Arizona.

On April 24, 2007, Mother filed a petition in the custody case for shared legal and physical custody of Paul Christopher. A hearing was held on May 2, 2007. Appellee Eidelman represented Appellant at the May 2 hearing. Under the agreed order entered that day, the parents would share legal custody of Paul Christopher. Appellant remained the primary physical custodian of the child and Mother received increased partial physical custody rights. The parties agreed that a psychologist would do an evaluation of the parties. A custody trial was scheduled for November 19, 2007.

According to the complaint in the present legal malpractice complaint, Appellant and Appellee Eidelman did not receive a copy of the psychological evaluation until November 14, 2007. On "November 16, 2007, Abeln (Appellant) fired Eidelman (Appellee) as his attorney for incompetence, via e-mail, and asked her to request a continuance of the trial and to contact his new attorney, Pepper, prior to November 19." (Paragraph 24, Complaint.)

The Honorable Maria L. Dantos convened court in the custody case on November 19, 2007. Appellee Eidelman presented a petition to withdraw as counsel for Appellant based on the November 16 e-mail Appellant sent her. Judge Dantos granted that petition. Then, by agreement, the trial was continued to January 22, 2008, so Appellant could have the opportunity to secure the services of Pepper. Also on November 19, 2007, after Appellee Eidelman was excused from further representation, Appellant, acting *pro se*,

6

agreed in a full record colloquy with Judge Dantos to another interim custody arrangement whereby he and Mother would share legal and physical custody of Paul Christopher.

It would have been improper for Appellee to give her input about the wisdom of the November 19 agreed order or to provide advice for Appellant as the agreement was being stated. Appellant had not yet secured the services of his next attorney so he was on his own – by his choice – when the agreement was reached. The record of that hearing demonstrates a complete setting forth of the agreement and Appellant's acceptance of it.

As a general rule, a litigant is not permitted to agree to a settlement and subsequently bring a malpractice suit against his attorney based on the terms of the settlement. *Muhammad v. Strassburger*, 526 Pa. 541, 546, 587 A.2d 1346, 1348 (1991). The Superior Court has held that *Muhammad* precludes a malpractice action where a settling client merely alleges that settlement resulted from "a deficiency in the lawyer's exercise of his or her professional judgment." *McMahon v. Shea*, 441 Pa.Super. 304, 313, 657 A.2d 938, 942 (1995). Conversely, a malpractice suit stemming from a settlement may proceed where a litigant shows that the settlement resulted from fraud or from the attorney's failure to correctly explain legal principles or the consequences of the settlement to the litigant. *Id.*

From the record developed through discovery, there was no evidence of fraud or of pressure or of anything improper by Appellee Eidelman to show that Appellant was forced or tricked into accepting the custody arrangement in the November 19 agreed order or the two earlier agreed orders. Further, there was no evidence of inaccurate advice or the creation of unattainable expectations planted by Appellee Eidelman. Thus, under *Muhammad* and its progeny, Appellant was properly precluded from proceeding with the

7

ADD35

malpractice case against Appellee Eidelman.

The second allegation of error in the Concise Statement reads:

> Did the trial court err in granting summary judgment to Eidelman on grounds that Abeln's request for damages, attributable to his forced relinquishment of some physical custody of his child due to Eidelman's professional negligence, was tantamount to a legally foreclosed claim for emotional distress damages, where the recoverability of such damages is a legal issue of first impression in Pennsylvania, and to summarily preclude such damages would vitiate meaningful claims for legal malpractice in most, if not all, child custody cases?

One of the arguments made by Appellee Eidelman in support of her motion for summary judgment was that Appellant Abeln could not prove damages. However, the damage issue was not a basis for the entry of summary judgment.

Appellant's third allegation of error in the Concise Statement asks:

> Did the trial court err in granting Eidelman's motion to sever her case from that of co-defendant ... without making "an express determination that an immediate appeal would facilitate resolution of the entire case," where the trial court's termination of Abeln's case against Eidelman alone, while Pepper's counterclaim against Abeln had yet to be adjudicated, violated Pa.R.A.P. 341(c) and was entered without affording Abeln an adequate opportunity to be heard in opposition?

Appellant is incorrect in his assertion that the severance order should be analyzed under Pa.R.A.P. 341(c). Rather, in ruling on the motion, I properly applied Pa.R.C.P. 213(b) which states:

> The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

8

ADD36

Appellee Eidelman sought the severance of the claims against her from the claims that Appellant brought against Attorney Pepper for several reasons. With the granting of summary judgment on January 25, 2012, in favor of Appellee Eidelman, there were no further claims by Appellant pending against her in the trial court so she wanted the case to end. It could not end without severance from the Pepper claims because Pepper's counterclaim was still pending. Appellee Eidelman also sought the severance because of concerns with her malpractice insurance carrier about an active law suit against her. Third, she wanted to pursue a *Dragonetti* action against Appellant Abeln. With these reasons in mind, Appellee Eidelman was able to demonstrate that the motion should be granted in the interest of convenience and avoidance of prejudice to her. She met the standard for severance of claims. The record shows that Appellee Eidelman gave notice of the presentation of her severance motion, that Appellant did not appear to oppose it and that there was no later challenge to the severance order through a motion for reconsideration.

The fourth contention of error reads: "Did the trial abuse its discretion in denying Abeln's motion *in limine* to exclude at trial evidence of his mental health treatment, during the pendency of the child custody case?" The motion *in limine* was filed on October 12, 2011. It became moot when summary judgment was entered for Appellee. If summary judgment was properly entered for Appellee, there would be no trial so there was no need for a motion *in limine*.

The final issue posed by Appellant Abeln is: "Did the trial court err in denying Abeln's motion to vacate the judgment entered in favor of Eidelman (judgment entered on June 7, 2013), where the severance of her case from that of her co-defendant Pepper had

9

ADD37

been erroneously or improvidently granted?" As I have said, the judgment that Appellee Eidelman took on June 7, 2013, was unnecessary because the summary judgment entered on January 25, 2012, became a final order after entry of the November 6, 2012, severance order. Therefore, the motion to vacate the redundant judgment probably should have been granted. The severing of the claims against the two attorneys was proper for the reasons that I have stated. The matters raised by Appellant under this last claimed error do not alter the fact that the Superior Court should now examine whether I properly entered summary judgment for Appellee Eidelman. For the reasons stated above, it is respectfully submitted that the entry of summary judgment was proper and that this appeal should therefore be denied.

September 18, 2013

WILLIAM E. FORD, JUDGE

10

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CIVIL DIVISION

PAUL J. ABELN,

     Plaintiff

     v.

MARY J. B. EIDELMAN, ESQUIRE, and
RICHARD HUNTINGTON PEPPER,
ESQUIRE,

     Defendants

No. 2009-C-6037

(Superior Court No. 2573 EDA 2013)

\*\*\*\*\*\*\*\*

Appearances:

     Richard L. Caplan, Esquire,
        on behalf of Plaintiff/Appellant, Paul J. Abeln

     Arthur W. Lefco, Esquire,
        on behalf of Defendant/Appellee, Richard Huntington Pepper, Esquire

\*\*\*\*\*\*\*\*

WILLIAM E. FORD, JUDGE

### Pa.R.A.P. 1925(a) O P I N I O N

This is a legal malpractice case in which Plaintiff/Appellant, Paul J. Abeln, brought suit against Defendant/Appellee, Attorney Richard Huntington Pepper, and Attorney Mary J. B. Eidelman who is not a party to this appeal before the Superior Court of Pennsylvania. I granted defense motions for summary judgment dismissing the claims against both attorney defendants. Appellant Abeln filed the present appeal from my granting the motion for summary judgment in favor of Appellee Pepper.

ADD40

Case History

This legal malpractice action arises from a custody case, *Paul J. Abeln v. Heidi C. Noll*, Lehigh County number 2007-FC-0427 ("the custody case"). In this malpractice suit, Appellant claims that each of the attorney defendants by their consecutive representation in the custody case was responsible for diminishing through court orders his custody rights to Paul Christopher Abeln, the child that he has with Heidi C. Noll ("Mother").

Appellant commenced this malpractice suit on November 13, 2009, by filing a praecipe for writ of summons. Thereafter, Appellant filed a complaint on January 22, 2010. After discovery, each attorney defendant filed a motion for summary judgment on September 1, 2011. I granted the motions for summary judgment in favor of the attorney defendants and against Appellant on January 25, 2012. The judgments were not appealable at that point because Appellee Pepper had an unresolved counterclaim for counsel fees filed under this same case number.

On November 6, 2012, I entered an order granting Attorney Eidelman's uncontested motion to sever the malpractice claim brought against her from the malpractice claim brought against Appellee Pepper. Appellant Abeln filed a notice of appeal to the Superior Court from the January 25, 2012, order granting summary judgment in favor of Attorney Eidelman. That appeal is pending at Superior Court docket number 1978 EDA 2013.

On September 6, 2013, judgment was entered in favor of Appellee Pepper and against Appellant on Pepper's counterclaim for counsel fees which Pepper filed in response to Appellant's malpractice complaint. On September 10, 2013, Appellant appealed the judgment on the counterclaim and the summary judgment in favor of

2

ADD41

Appellee Pepper on the malpractice allegations. This is the present appeal and it is assigned Superior Court docket number 2573 EDA 2013. In an order dated November 1, 2013, the Superior Court consolidated the two appeals.

On October 1, 2013, in response to an earlier order, Appellant filed a statement under Pa.R.A.P. 1925(b) ("Concise Statement") in which he sets forth four numbered claims of error in the present appeal at 2573 EDA 2013. Each challenges the granting of summary judgment for Appellee Pepper.

Discussion and Conclusion of Law

To properly evaluate Appellant's claims of error, it is necessary to understand the history of Appellee Pepper's representation of Appellant in the underlying custody case.

Appellant's first attorney in the custody case was defendant, Attorney Eidelman. Appellant retained Attorney Eidelman on March 29, 2007. With that attorney's assistance, Appellant Abeln obtained two agreed interim orders for custody of his son.

On November 16, 2007, Appellant first consulted Appellee Pepper. (Paragraph 21, complaint.) On the same date, "Appellant fired Eidelman as his attorney for incompetence, via email, and asked her to request a continuance of the (custody) trial (scheduled for November 19, 2007) and to contact his new attorney, (Appellant) Pepper, prior to [the custody trial]." (Paragraph 24, complaint.) Despite this last statement, Appellant did not execute a written retainer agreement with Appellee Pepper until December 3, 2007. (Paragraph 32, complaint.)

On November 19, 2007, when the case was called for trial, the court excused defendant Eidelman from further representation at Appellant's request. Appellee Pepper,

3

who was not yet retained and was only first consulted on the Friday before this Monday court date, did not appear in court on November 19. By agreement, the trial was continued to January 22, 2008. Mother, through her attorney, indicated she was prepared on November 19 to proceed to trial, but the court gave Appellant the opportunity to secure the services of Pepper for the trial. Appellant, acting *pro se*, agreed to another interim custody arrangement whereby he and Mother would share legal and physical custody of Paul Christopher. (Appellant subsequently sued defendant Eidelman under the present case number alleging she committed malpractice and was responsible for the terms of this order agreed by Appellant even though Eidelman had been fired as counsel before this agreed order was entered.)

Appellant Abeln and Mother appeared in court on January 22, 2008, for the rescheduled trial. Appellee Pepper represented Appellant Abeln and Mother also had counsel. Another agreed order was entered. This is the order which Appellant attributes to malpractice by Appellee.

Under this agreed order, the parents shared legal custody of Paul Christopher. Mother was designated as the primary physical custodian. Appellant was given partial custody rights. The lengthy agreement of the parties was set forth on the record before the Honorable Maria L. Dantos on January 22, 2008. At one point during the presentation of the agreement, there was an interruption when Appellant Abeln and Appellee Pepper spoke privately. At a later point during the proceedings, Appellant, through Pepper, clarified that the parties would be following, in regard to counseling and a parenting coordinator, recommendations found in a written custody evaluation made part of the record that date and prepared by a psychologist, Doctor Phillip Nastasee. Appellee Pepper stated that

4

Appellant was noting his disagreement with other significant aspects of Doctor Nastasee's report. Doctor Nastasee's report resulted from an agreement of the parties made months earlier that they would pay him to do a custody evaluation of this family. Both parents stated their agreement to the terms of the custody arrangement reached on January 22, 2008, in response to questions by Judge Dantos before she entered the agreed order which resolved all issues for which trial was to be conducted.

Appellant perceived the Nastasee report as unfavorable to him. He claims in the present suit that Appellee Pepper was professionally negligent in not challenging the Nastasee report at the January 22, 2008, trial. Specifically, Appellant contends that Pepper should have hired an opposing psychologist to critique the Nastasee report. Instead, according to Appellant, "Pepper recommended to Abeln that they exploit a strategy of delay to allow the [r]eport to become stale and then request a new evaluation." Appellee Pepper, with Appellant's consent, followed through on this strategy by filing a petition for modification of custody on March 11, 2008, and by filing the "Petition for Psychological and Mental Examination of Parties" on September 16, 2008.

In this petition for a second evaluation, Appellee Pepper asked that the court direct the parties to undergo a psychological evaluation by Steven E. Samuel, Ph.D.. Appellee Pepper filed a memorandum in support of his petition. Pepper represented Appellant Abeln at the October 8, 2008, hearing on the petition. Pepper brought Doctor Samuel to the hearing. No one testified at the hearing over which I presided. I granted the petition for the second evaluation based on the arguments of counsel.

On October 16, 2008, Mother, acting *pro se*, filed a motion for reconsideration of the order setting up the evaluation by Doctor Samuel. After argument on this motion, I

5

entered an order dated November 13, 2008, granting reconsideration. In that order, I rescinded the order of October 8, 2008, so that Mother and Appellant Abeln were no longer compelled to undergo an evaluation by Doctor Samuel. I indicated that the October 8, 2008, order "is rescinded without prejudice to plaintiff (Appellant) to renew his motion for psychological evaluation at the appropriate time during the trial in this case."

On January 28, 2009, I entered an order granting Appellee Pepper's petition to withdraw as counsel for Appellant Abeln. According to Paragraph 3 of the petition, Appellant had not paid Appellee for services rendered and Appellant and Appellee had philosophical differences about the handling of the custody case. On February 13, 2009, Attorney Stephen J. Anderer entered an appearance on behalf of Appellant.

Mother filed a petition for relocation to Arizona on January 16, 2009. That and Appellant's petition for modification were heard at the trial which was conducted in March and April, 2009, before me. Attorney Anderer represented Appellant at that custody trial. Mother was also represented by counsel at the trial. Attorney Anderer, in his trial preparation and at trial, did not renew the request for an evaluation of the parties by Doctor Samuel. On May 18, 2009, after trial, I entered an order mandating that Appellant Abeln and Mother jointly share legal custody and equally exercise physical custody of their child.

With the above history in mind, I now turn to the four allegations of error raised by Appellant in his Concise Statement.

In the first allegation of error, Appellant Abeln argues that I improperly granted summary judgment in favor of Pepper under the *Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346 (1991), and *McMahon v. Shea*, 441 Pa.Super. 304, 657 A.2d 938 (1995) cases. I found that, as a matter of law, summary judgment had to be entered for Appellee

6

Pepper because the alleged negligent conduct against Pepper stemmed from the custody

order of January 22, 2008, entered with Appellant's agreement without any evidence of

coercion or other improper action by Pepper. My decision was correct.

This is Appellant's allegation against Appellee Pepper that Appellee forced him to

reach an agreement embodied in the January 22, 2008, order which cut into Appellant's

custody time with his child:

> Pepper unfairly pressured Abeln into accepting an
> unfavorable settlement, of the custody issue that would
> otherwise have been resolved at trial, by both failing to
> adequately prepare to effectively advance Abeln's interests
> at the trial and by repeatedly advising him that, in the
> absence of a settlement, the tenor of the (Nastasee) report
> and the inexperience of the judge virtually guaranteed that
> Abeln would lose what little physical custody of Paul he
> and his son enjoyed.

(Paragraph 66(c), complaint.)

As a general rule, a litigant is not permitted to agree to a settlement and

subsequently bring a malpractice suit against his attorney based on the terms of the

settlement. *Muhammad v. Strassburger*, 526 Pa. 541, 546, 587 A.2d 1346, 1348 (1991).

The Superior Court has held that *Muhammad* precludes a malpractice action where a

settling client merely alleges that settlement resulted from "a deficiency in the lawyer's

exercise of his or her professional judgment." *McMahon v. Shea*, 441 Pa.Super. 304, 313,

657 A.2d 938, 942 (1995). Conversely, a malpractice suit stemming from a settlement

may proceed where a litigant shows that the settlement resulted from fraud or from the

attorney's failure to correctly explain legal principles or the consequences of the settlement

to the litigant. *Id.*

In the evidence presented through discovery, Appellee Pepper, upon review of the

7

ADD46

Nastasee report, concluded that Father would attain a more favorable custody arrangement through settlement than through trial. Instead of directly attacking the Nastasee report, Pepper advised Appellant that the better course of action was to reach a custody arrangement with Mother at the scheduled trial on January 22, 2008, allow the Nastasee report to lose its effect over time, work on personality issues through therapy, secure a second evaluation of the parties and then attempt to get a better custody arrangement in a subsequent proceeding. Appellant accepted this strategy and then Appellant and Appellee worked to implement it.

Appellant Abeln now contends that the January 22, 2008, agreed order resulted from Pepper's flawed strategy of not impeaching the Nastasee report, pursuing the settlement option and then bringing litigation later once a more favorable psychological evaluation was obtained. Appellant does not allege that he entered the January 22, 2008, agreement as a result of fraud or Pepper's failure to correctly explain to him the pertinent legal principles or the consequences of the agreement. While Appellant contends that he was coerced into the agreed order, examination of the evidence developed through discovery reveals that Appellant is actually claiming "a deficiency" in Pepper's "exercise of his professional judgment" in pursuing one litigation strategy over another. As the Superior Court noted in *McMahon v. Shea*, the *Muhammad* rule operates to preclude malpractice suits where a litigant claims his unfavorable settlement resulted merely from his lawyer's exercise of professional judgment. Thus, these malpractice claims asserted by Appellant are precluded as a matter of law.

Further, Appellant gave his informed consent to the agreement entered on January 22, 2008. The record from the hearing reveals a setting forth of the specifics of the

8

ADD47

custody agreement. At one point, as the agreement was being set forth, Appellant interjected his comment that he felt the transportation provisions for Paul Christopher were too broadly stated and that there was conflict in the transportation provisions. N.T., 1/22/08, p. 7. Later in the hearing, Appellant responded to a question by the judge that he understood provisions regarding any planned removal of the child from Pennsylvania. N.T., 1/22/08, p.20. Finally, Appellant gave his approval to the custody provisions put on the record by the attorneys. N.T., 1/22/08, p. 23.

Appellant's statement in his complaint (Paragraph 66(c)) that he was "unfairly pressured" by Pepper to enter into the January 22, 2008, agreement is contrary to Appellant's email to Appellee Pepper dated December 20, 2007. In it, Appellant stated to Pepper: "If you are successful in getting Zamborsky (Mother's attorney) & Heidi to discuss a custody arrangement, I would consider Heidi having title of primary physical custodian with the following visitation schedule (which Father then set forth)." (The December 20, 2007, email is attached to Appellee Pepper's motion for summary judgment as Exhibit G. Appellant admitted sending this email in Paragraph 20 of his reply to Pepper's motion for summary judgment filed on September 29, 2011.) Also, in a statement which is part of a document that Appellant prepared entitled "Self Report Progress Note, dated February 20, 2008," Appellant wrote:

> I made the hardest decision of my life on 1/22/08 by offering Heidi the title of primary physical custodian, not because she was deserving of it but because I hoped that by giving her what she craved most, that she would stop the hostile actions and start to cooperate in a civil, responsive manner that is in the best interests of our son.

9

ADD48

(The progress note is attached as Exhibit S to Appellee's October 24, 2011, "Motion to Supplement Summary Judgment Record" (supplemental motion). Appellant has confirmed the progress note is authentic. See Exhibit 1 to the supplemental motion.

Appellant further demonstrated that the January 22, 2008, agreement was his agreement with his testimony on March 24, 2009, during the custody trial, in the following exchange:

> Q: And why did you agree to the order (stipulated order of January 22, 2008)?
>
> A: Because I was very concerned about Nastasee's report having so many problems with it. I was concerned that I was going to have a worse – I was not going to see my son at all. And I had hoped that if I had given Heidi what she was craving, that the hostility and aggressiveness towards me would end, and that she would enable us to start co-parenting in the best interest of our son. And I had hoped, based on the terms of that agreement, that we would be able to use co-parent counseling and a parenting coordinator to resolve differences and get on better grounds so that in fact we would maximize the amount of time that both of us shared with our son.

N.T., 5/24/09, p.110.

Thus, under the authority of *Muhammad* and *McMahon*, I properly entered summary judgment for Appellee Pepper.

In his second allegation of error, Appellant claims that I ignored his "credible evidence in the record" supporting the malpractice claim so that the granting of summary judgment was not proper. As to the evidence I supposedly ignored, Appellant points to "the professional opinion of a qualified legal malpractice expert." This is a reference to Richard A. Katz, Esquire, who authored an opinion letter dated April 29, 2011. The

10

August 29 letter refers to a March 4, 2010, letter by Attorney Katz. This earlier letter does not appear to be part of the record. Appellant also refers to "Pepper's admissions in deposition" which are not specified in the Concise Statement. Finally, he refers to Appellant's own testimony that Pepper's failure to adequately prepare for a custody trial wrongfully prevented him from exercising meaningful discretion" to choose a trial over the settlement of January 22, 2008. There is also no specificity given as to the fashion in which Appellee Pepper supposedly failed to adequately prepare for trial although the Concise Statement, taken as a whole, does make it clear that Appellant faults Appellee Pepper for not preparing a critique of the Nastasee report.

I have already commented on Appellee Pepper's advice not to attack the Nastasee report. That entire subject falls under the strategy advice provided by Pepper to Appellant and accepted by Appellant. As I have already explained, as a matter of law, that strategy decision by Pepper cannot be used as a basis for this malpractice claim after it resulted in the agreed order of January 22, 2008. The remainder of these allegations in Appellant's second claim of error are not specific. I do not know to what aspects of the legal malpractice expert's reports Appellant is referring and to what alleged lack of trial preparation Appellant is referring beyond the Nastasee issue. Moreover, all of the legal malpractice expert's opinions and Appellant's preserved issues appear to go back to the Nastasee issue.

In the third claim of error, Appellant complains that the court's erroneous ruling in granting summary judgment in favor if Appellee Pepper wrongfully deprived him "of his only viable defense to Pepper's counterclaim for attorney's fees." The counterclaim was heard at an arbitration at which no record was made. However, if the court properly

11

ADD50

granted summary judgment in favor of Pepper, then there is no substance to this allegation of error and it should be denied.

The final allegation of error reads:

> Did the trial court err in finding no negligence in Pepper's failure to offer testimony of a qualified psychologist, with knowledge of Abeln's wife's past performance on certain probative psychological tests, to support Abeln's motion to have the mental stability of his wife evaluated in order to gain primary physical custody of his child?

A response to this requires a summary of what I have already stated. The psychological evaluation completed by Doctor Nastasee before the January 22, 2008, agreed order resulted from the decision by Appellant Abeln and Mother to jointly pay for and cooperate in the completion of that report. Second, there was the strategic decision recommended by and then made by Abeln not to have a second psychological report completed before the January 22, 2008, agreed order. Third, Appellant Abeln, agreeing with the advice of Appellee Pepper, waited a number of months following the agreed order and then filed a motion asking the court for a second psychological evaluation to be conducted by Doctor Samuel. The court initially granted that request and then rescinded the authorization for it against the wishes of both Appellant and Appellee. Fourth, Attorney Anderer, with whom Appellant Abeln apparently has no problem in regard to representation, did not resubmit a request for a second psychological evaluation at any point before or during the trial that occurred in March and April of 2009, despite being given the opportunity to request a second psychological evaluation by the court when it rescinded the authorization for the evaluation by Doctor Samuel. The trial in 2009, where no additional psychological evidence was presented, yielded a result that Appellant

12

ADD51

acknowledges was acceptable to him. Thus, there is no factual dispute that Appellant Abeln was able to secure a result acceptable to him in terms of custody with his son without any second psychological evaluation.

As the fact-finder and the judge who made the decision at the trial in March and April of 2009, far too much weight is placed by Appellant Abeln on the effect that Doctor Nastasee's report and testimony had at any point. This was perhaps best demonstrated by the result of the trial conducted in March and April, 2009. With these factors in mind, as a matter of law, there can be no merit to the claim that Appellee Pepper was negligent for failing to go beyond what he did to secure a second psychological evaluation.

Because the granting of summary judgment in favor of Appellee Pepper and against Appellant Abeln was proper, this appeal should be denied.

November 8, 2013

WILLIAM E. FORD, JUDGE

13

ADD4

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

CIVIL DIVISION

PAUL J. ABELN,

       Plaintiff             :          No. 2009-C-6037

       v.

MARY J. B. EIDELMAN, ESQUIRE, and :
RICHARD HUNTINGTON PEPPER,
ESQUIRE,

       Defendants

\* \* \* \* \* \* \* \*

WILLIAM E. FORD, JUDGE

## OPINION

This is a legal malpractice suit which arises from a Lehigh County custody action,
*Paul Abeln v. Heidi C. Noll*, Lehigh County 2007-FC-0427. The child, the subject of the
custody case, is Paul Christopher Abeln who was born on August 7, 2006. Paul
Christopher's parents are plaintiff herein, Paul J. Abeln (who will be referred to as
"Father"), and Heidi Noll Abeln ("Mother"), who is not a party to this malpractice suit.
Defendant, Attorney Mary J. B. Eidelman, and then defendant, Attorney Richard
Huntington Pepper, represented Father in the custody action. Father alleges in the present
legal malpractice action that each of these attorneys committed professional negligence
and breach of contract in each attorney's respective representation of him in the custody
case.

NOW, 1-26-12
COPIES OF THE WITHIN COURT
ORDER OR DECREE MAILED TO
ALL INTERESTED PARTIES BY:
c/ff

ADD5

Defendants filed motions for summary judgment. Because there is merit to the motions, I grant them and enter judgment for the defendants.

**Claims against Attorney Eidelman**

Father hired defendant Eidelman as his attorney on March 29, 2007, to pursue a divorce from Mother and for custody of Paul Christopher. Eidelman filed a divorce complaint on March 30, 2007. The complaint included a count for primary custody of Paul Christopher. The divorce case with custody count was docketed in the Lehigh County Court of Common Pleas at 2007-FC-0427.

On March 24, 2007, Mother secured an order from a magisterial district judge against Father under Pennsylvania's Protection from Abuse Act (PFA) at an *ex parte* hearing. Under the terms of that order, Father was evicted from the marital residence in Orefield, Lehigh County, Pennsylvania. The order provided that it would expire at the end of the next business day unless further action were taken by Mother. Mother permitted the *ex parte* order to expire and she did not proceed with the PFA matter in Lehigh County Court. However, after Mother secured the *ex parte* order, she took Paul Christopher with her to Arizona without advance notice to Father.

On April 5, 2007, defendant Eidelman filed a petition for emergency relief on behalf of Father. In the petition, Father sought the immediate return of Paul Christopher to Pennsylvania. Father also sought "temporary primary physical custody" of Paul Christopher.

On April 5, 2007, at a hearing in Lehigh County Court with both parents present, the petition for emergency relief was resolved by agreement. Under the agreement, Father

2

ADD6

was granted exclusive possession of the marital residence. He was made the primary physical custodian of Paul Christopher. Mother was given visitation with the child for a minimum of three hours per day. The parties agreed that these provisions would be temporary. Additionally, Mother agreed to withdraw a protection from abuse case she filed in Arizona. The parties agreed to engage in counseling. Defendant Eidelman represented Father at this hearing.

On April 24, 2007, Mother filed a petition for shared legal and physical custody of Paul Christopher. A hearing was conducted on this petition on May 2, 2007. Defendant Eidelman represented Father at the May 2 hearing. Again an agreement was reached. The agreement, which was made an order of court, had interim custody provisions. Under the agreement, the parents would share legal custody of Paul Christopher. Father remained the primary physical custodian of Paul Christopher. Mother received increased partial physical custody rights. The parties agreed that either Doctor Phillip Nastasee or Doctor Eileen Ginsburg would do a psychological evaluation of the parties. Trial on the custody count in the complaint was scheduled for November 19, 2007.

According to the present malpractice complaint, Father and defendant Eidelman did not receive a copy of Doctor Nastasee's evaluation until November 14, 2007. On "November 16, 2007, Abeln fired Eidelman as his attorney for incompetence, via e-mail, and asked her to request a continuance of the trial and to contact his new attorney, (defendant) Pepper, prior to November 19." (Paragraph 24, Complaint.)

The Honorable Maria L. Dantos convened court in the custody case on November 19, 2007. Defendant Eidelman presented a petition to withdraw as counsel for Father. Judge Dantos granted that petition.

3

ADD7

According to the malpractice complaint, Father initially consulted defendant Pepper on November 16, 2007, the day Father "fired" Eidelman. (Paragraph 21, Complaint.) Father executed a written retainer agreement with Pepper on December 3, 2007. (Paragraph 32, Complaint.) Pepper entered his appearance on February 8, 2008, although Pepper appeared with Father in court in January, 2008, as I will explain.

I return to a description of what occurred when this case was called for trial on November 19, 2007. Shortly after the start of the hearing, defendant Eidelman was excused from further representation. Defendant Pepper, who was not yet retained and was only first consulted on the Friday before this Monday hearing, did not appear at the November 19 hearing. By agreement, the trial was continued to January 22, 2008. Mother, through her attorney, indicated she was prepared on November 19 to proceed to trial, but the court gave Father the opportunity to secure the services of Pepper. Also on November 19, 2007, after Eidelman was excused from further representation, Father, acting *pro se,* agreed to another interim custody arrangement whereby he and Mother would share legal and physical custody of Paul Christopher.

In Count I of the complaint, Father alleges legal malpractice by defendant Eidelman for the following reasons: (a) failing to seek access to Doctor Nastasee's work papers for the psychological evaluation; (b) failing to prepare Father for his examination by Nastasee as part of the evaluation process; (c) failing to seek a continuance of the November 19, 2007, trial date and failing to retain an independent expert to critique Nastasee's findings; (d) failing to prepare witnesses for and arrange the attendance of witnesses at trial; (e) failing to prepare Father for testimony at trial; (f) preparing proposed findings of fact and conclusions of law before the presentation of any trial testimony; (g)

4

ADD8

taking an out-of-state vacation immediately prior to trial "with knowledge that transportation difficulties might arise that could prevent her (Eidelman) from appearing with Abeln at the trial"; and (h) using a pretext as a reason for refusing to request a continuance of the November 19, 2007, scheduled trial. (Paragraph 56, Complaint.)

As his damages, Father claims that he was "forced to accept an unfavorable, negotiated outcome that not only deprived him of a substantial amount of contact with his son, Paul, but exposed Paul to longer periods of Heidi's care to the child's emotional detriment." (Paragraph 57, Complaint.)

In Count II of the complaint, Father states a breach of contract claim against defendant Eidelman. He alleges that the negligent acts stated in the complaint, which I just summarized, constitute a breach of Paragraph 5 of the retainer agreement whereby Eidelman promised that "[e]very reasonable effort will be made to prosecute and/or defend your case diligently and efficiently according to legal, ethical and local practice standards in an effort to achieve solutions which are just and reasonable to you." (Paragraphs 60 and 61, Complaint.) As to damages, Father only alleges that, "[a]s a foreseeable consequence of Eidelman's breach, Abeln suffered money damages that exceed arbitration limits of this court." (Paragraph 62, Complaint.) There is no specification as to "money damages."

In the motion for summary judgment filed by defendant Eidelman on September 1, 2011, she states she is entitled to summary judgment because plaintiff cannot prove damages related to her representation. In this regard, Eidelman points out that she was not Father's attorney when he agreed to shared custody on November 19, 2007, and that the

shared custody order that Judge Dantos entered on that date was actually entered by agreement of Father with Mother. There is merit to these arguments made by Eidelman.

The gravamen of Father's complaint is that the negligence of his attorneys led to orders whereby his custody with Paul Christopher was gradually diminished through court orders. While there was diminishment of Father's custodial rights at times through court orders, there is no evidence in the record that it was caused by any negligence by defendant Eidelman.

With defendant Eidelman as Father's attorney, the agreed order of April 5, 2007, was entered. Under that order, Father was made the sole legal custodian of Paul Christopher. He was granted primary physical custody of the child. With Eidelman as his attorney, the agreed order of May 2, 2007, was entered. Under that order, the parties shared legal custody of Paul Christopher. Father remained the primary physical custodian, but Mother's custodial time with Paul Christopher increased. These are the only two orders setting forth custodial rights of the parents while Eidelman was Father's attorney. The order entered on November 19, 2007, was entered by agreement of Father after Eidelman had been excused by court order from further representation. Under this agreed order, the parties shared both legal and physical custody of Paul Christopher.

There is no evidence that defendant Eidelman is legally responsible for the November 19, 2007, order providing shared custody. Because Father "fired" Eidelman days before the November 19 hearing and Judge Dantos granted Eidelman's petition to withdraw before the parties stated their agreement at the November 19 hearing, it would have been improper for Eidelman to give her input about the wisdom of the agreement or to provide advice for plaintiff as the agreement was being stated. Father had not yet

6

secured the services of his next attorney so he was on his own – by his choice – when the agreement was reached. The record of that hearing demonstrates a complete setting forth of the agreement and Father's acceptance of it.

Furthermore, as a general rule, a litigant is not permitted to agree to a settlement and subsequently bring a malpractice suit against his attorney based on the terms of the settlement. *Muhammad v. Strassburger*, 526 Pa. 541, 546, 587 A.2d 1346, 1348 (1991). In commenting on the proper application of the rule announced in *Muhammad*, the Superior Court stated:

> *Muhammad* has been held to be controlling where the lawyer's alleged negligence consisted of "advising and representing [a client] and in negotiating for him the terms of [a] settlement and sale." *Goodman v. Kotzen*, 436 Pa.Super. 71, 77-79, 647 A.2d 247, 250 (1994). *Muhammad* was also held to be determinative where the client merely expressed dissatisfaction with the amount of her marital award and averred that the lawyer's conduct had caused her to receive "a deficient amount" of marital property, alimony and other available relief. *Spirer v. Freeland & Kronz*, 434 Pa.Super. 341, 344-46, 643 A.2d 673, 675 (1994). Finally, in *Martos v. Concilio*, 427 Pa.Super. 612, 629 A.2d 1037 (1993), *Muhammad* was held to be controlling where the lawyer's alleged negligence had consisted of an "alleged failure to adequately represent [the client] in negotiations of the settlement agreement." *Id.* at 613, 629 A.2d at 1038. These are situations in which the client perceived a deficiency in the lawyer's exercise of his or her professional judgment.

*McMahon v. Shea*, 441 Pa.Super. 304, 312-13, 657 A.2d 938, 941-42 (1995).

Conversely, the rule announced in *Muhammad* is inapplicable where a settlement occurs as a result of fraud or an attorney's failure to accurately advise the settling client of an established principle of law or the consequences of the settlement. *Muhammad v.*

ADD11

*Strassburger*, 526 Pa. at 546, 587 A.2d at 1346; and *McMahon v. Shea*, 441 Pa.Super. at 313, 657 A.2d at 942.

In the case at bar, the record demonstrates that Father knowingly and voluntarily entered the November 19, 2007, agreement. As was previously mentioned, Eidelman was not present at the agreement because Father chose to terminate her representation three days before the hearing. All of the evidence demonstrates that Father entered the agreement without the assistance of Eidelman by his own choice. There is no evidence demonstrating that Father entered the agreement as a result of fraud or a failure by Eidelman to provide Father with accurate legal advice. Thus, under *Muhammad* and its progeny, Father is precluded from alleging malpractice against Eidelman based on the terms of the November 19 agreement.

Father also makes trial preparation allegations against defendant Eidelman. As I pointed out, Father alleges in Paragraph 56(a) of the complaint, that Eidelman failed to secure the work papers for the evaluation by Doctor Nastasee. However, only two days after the Nastasee report was given to Eidelman and Father, Father fired Eidelman. Father further faults Eidelman for not preparing him for his interviews with Doctor Nastasee. However, neither the complaint nor the discovery indicates how the failure to interview affected the report or testimony of Doctor Nastasee.

Father claims defendant Eidelman was negligent in not requesting a continuance of the November 19, 2007, trial after the Nastasee report was released. The court granted a continuance of the November 19 trial by agreement of the parties. The court granted the continuance so Father could secure the services of his next attorney, Pepper. Therefore,

ADD12

Father cannot demonstrate any damages resulting from this alleged negligence on the part of Eidelman.

Father next contends that defendant Eidelman was negligent for not retaining an expert to critique Nastasee's report, not preparing witnesses for trial and not preparing Father for trial. As to the allegation that Eidelman did not retain another expert, how could she do that? As I pointed out, she was fired right after the Nastasee report was released. The other allegations of insufficient trial preparation by November 19, 2007, have no merit. The continuing of the trial date beyond November 19, 2007, was reasonable and even predictable in light of the release of the report only days before November 19 and Father's firing of Eidelman. The continuance was granted to allow Father to prepare. Trial did not occur until more than a year and four months after Eidelman was excused from representation and, in the interim, Father and Mother lived under their agreed custody order of November 19, 2007. Under these circumstances, there is no evidence of insufficient trial preparation nor evidence that Eidelman's conduct impacted any diminishment of Father's custody rights.

As to the remaining allegations of professional negligence against defendant Eidelman, they are patently frivolous. I refer to the contentions about Eidelman's pre-trial preparation of findings of fact and conclusions of law, her vacation and other allegations about continuing the November 19, 2007, trial date.

The professional negligence claims against defendant Eidelman lack a legal and factual basis so judgment must be entered for Eidelman on them. Further, because the breach of contract claim rests upon the claims of negligence, the breach of contract claim fails.

9

## Claims against Attorney Pepper

Following Eidelman's withdrawal from the case, Father and Mother appeared in court on January 22, 2008, for the rescheduled trial. Both parents were represented by counsel for that day's proceedings. Another agreed order was entered. Under the agreed order, the parents shared legal custody of Paul Christopher. Mother was designated as the primary physical custodian. Father was given partial custody rights. The lengthy agreement of the parties was set forth on the record before Judge Dantos. At one point during the presentation of the agreement, there was an interruption when Father and his attorney, defendant Pepper, spoke privately. At a later point during the proceedings, Father, through Pepper, clarified that the parties will be following Doctor Nastasee's recommendations in regard to counseling and a parenting coordinator but that the parties are not agreeing to Doctor Nastasee's conclusions. It was also made clear that Father was contesting allegations, conclusions, diagnoses and other things contained in Doctor Nastasee's report. The report was made part of the record during that proceeding. Both parents stated their agreement to the terms of the custody arrangement in response to questions by Judge Dantos.

On March 11, 2008, after a contested hearing, the Honorable Edward D. Reibman entered a final PFA order in favor of Mother and against Father for a period of three years. (Lehigh County case number 2008-PF-0089.)

On March 11, 2008, Father, through defendant Pepper, filed a petition for modification of custody. Mother filed a petition on January 16, 2009, for relocation to

10

ADD14

Arizona. Both petitions were heard at the trial which was conducted in March and April, 2009, before me.

In preparation for the trial on these petitions, Father, through defendant Pepper, filed "Petition for Psychological and Mental Examination of Parties" on September 16, 2008. In it, he asked that the court direct the parties to undergo a psychological evaluation by Steven E. Samuel, Ph.D.. Pepper filed a memorandum in support of his petition. Attorney Pepper represented Father at the October 8, 2008, hearing on the petition. Pepper brought Doctor Samuel to the hearing. No one testified at the hearing over which I presided. I granted the petition for the evaluation based on the arguments of counsel.

On October 16, 2008, Mother, acting *pro se*, filed a motion for reconsideration of the order granting the evaluation by Doctor Samuel. After argument on this motion, I entered an order dated November 13, 2008, granting reconsideration. In that order, I rescinded the order of October 8, 2008, so that Mother and Father were no longer compelled to undergo an evaluation by Doctor Samuel. I indicated that the October 8, 2008, order "is rescinded without prejudice to plaintiff (Father) to renew his motion for psychological evaluation at the appropriate time during the trial in this case."

On January 28, 2009, I entered an order granting defendant Pepper's petition to withdraw as counsel for Father. According to Paragraph 3 of the petition, Father had not paid Pepper for services rendered and Father and Pepper had philosophical differences about the handling of the custody case. On February 13, 2009, Attorney Stephen J. Anderer entered an appearance on behalf of Father. Attorney Anderer represented Father at the custody trial in March and April, 2009. Mother was also represented by counsel at the trial.

11

ADD15

I entered an order dated February 26, 2009, granting Father's petition, presented by Attorney Anderer, for Doctor Nastasee's entire file. On the same date, I denied Mother's petition for discovery of the file of Doctor Samuel. As I indicated in the footnote to that second February 26 order, "At this point, according to counsel (Anderer) for plaintiff (Father), there is no expectation that Doctor Samuel will be called as a witness in this case." There was no further petition filed by Father for an evaluation by Doctor Samuel. As I made clear to the parties when I rescinded the order that allowed the evaluation by Doctor Samuel, I would have considered again an evaluation by Doctor Samuel if it appeared at the trial that such an evaluation was appropriate. In the event that such a petition had been submitted and if I deemed it appropriate, I would have adjourned the custody trial for Doctor Samuel's evaluation, made provision for his testimony, and entered an interim order until those things could be done.

In Count III of his complaint, Father brings a count for legal malpractice against defendant Pepper. In Count IV, Father alleges breach of contract by Pepper.

As to legal malpractice, Father claims that Pepper was professionally negligent by: (a) not seeking discovery of Doctor Nastasee's work papers; (b) by not suggesting the retaining of an expert for Father to rebut Nastasee's assessment of Father; (c) by unfairly pressuring Father into a settlement agreement in that Pepper was failing to properly prepare for trial and by advising Father that there would be a worse result if he did not accept the settlement; (d) by allowing Doctor Nastasee's report to be made part of the record (apparently, at the January 22, 2008, hearing); (e) by advising Father that no appeal could be taken from the PFA order entered by Judge Reibman on March 11, 2008; (f) by compromising Doctor Samuel's qualifications to testify and Doctor Samuel's credibility;

12

ADD16

and (g) by not calling Doctor Samuel as a witness in support of the petition to have Doctor Samuel conduct an evaluation.

In Count IV, Father alleges that his retainer agreement with defendant Pepper provided, in Paragraph 4, that "[w]e (Pepper) ... can assure you that you will receive the most conscientious, diligent and competent legal services available." Father alleges that Pepper violated this provision of the agreement by committing the negligence which is alleged in Count III, which allegations I have summarized in the preceding paragraph.

In his brief in opposition to Pepper's motion for summary judgment, Father withdraws his allegation of negligence for Pepper's allegedly not advising Father that no appeal could be taken from the PFA order. Additionally, although Father's complaint contains the seven allegations of negligence against Pepper that I just listed, Father's brief contains argument in support of only three of these allegations. Specifically, Father pursues only the claims that Pepper committed malpractice by failing to retain an expert to rebut the Nastasee report, by pressuring plaintiff to enter into an agreement with Mother on January 22, 2008, and by failing to call Doctor Samuel as a witness at the hearing on plaintiff's petition seeking an evaluation by Doctor Samuel. Thus, the allegations of negligence against Pepper stated in the complaint but not addressed in plaintiff's brief are waived.

Father's first allegation of negligence preserved against defendant Pepper is that: "Pepper never suggested retaining an independent psychological expert to critique Nastasee's Report and/or to reevaluate Abeln (Father) to attempt to rebut Nastasee's unflattering assessment of Abeln's parenting capabilities." (Paragraph 66(b), Complaint.)

13

ADD17

This allegation directly relates to Father's second malpractice claim in which he asserts that:

> Pepper unfairly pressured Abeln (Father) into accepting an unfavorable settlement, of the custody issue that would otherwise have been resolved at trial, by both failing to adequately prepare to effectively advance Abeln's interests at the trial and by repeatedly advising him that, in the absence of a settlement, the tenor of the Report and the inexperience of the judge virtually guaranteed that Abeln would lose what little physical custody of Paul he and his son enjoyed.

(Paragraph 66(c), Complaint.)

In essence, with the above allegations, Father contends that Pepper committed malpractice by deciding not to attack the credibility of the Nastasee report prior to the custody trial scheduled for January 22, 2008, thereby leaving Father unprepared for trial and forcing him to reach an agreement with Mother which further limited his custody time with the child.

These claims fail as a matter of law under the rule announced in *Muhammad Muhammad v. Strassburger*, 526 Pa. at 546, 587 A.2d at 1348, which, as I have explained, bars a litigant who voluntarily agrees to a settlement from subsequently bringing a malpractice suit against his attorney based on the terms of the settlement. The Superior Court has held that *Muhammad* precludes a malpractice action where a settling client merely alleges that settlement resulted from "a deficiency in the lawyer's exercise of his or her professional judgment." *McMahon v. Shea*, 441 Pa.Super. at 313, 657 A.2d at 942. Conversely, a malpractice suit stemming from a settlement may proceed where a litigant shows that the settlement resulted from fraud or from the attorney's failure to correctly explain legal principles or the consequences of the settlement to the litigant. *Id.*

14

In the case at bar, the evidence is undisputed that defendant Pepper, upon review of the Nastasee report, concluded that Father would attain a more favorable custody arrangement through settlement than through trial. In lieu of directly attacking the Nastasee report, Pepper advised that Father's best course of action was to reach a temporary custody arrangement with Mother at the hearing on January 22, 2008, obtain a continuance of the custody trial, and allow the Nastasee report to lose its effect over time. At some point in the future, Pepper would then (and actually did) attempt to secure a new evaluation of the parties. The record from the January 22, 2008, hearing reveals that Father knowingly and voluntarily entered into an agreement with Mother as envisioned by Pepper and previously explained by him to Father.

Father now contends that the January 22. 2008, agreement resulted from Pepper's allegedly flawed strategy of not impeaching the Nastasee report and instead pursuing the settlement option. Father does not allege that he entered the January 22, 2008, agreement as a result of fraud or Pepper's failure to correctly explain to him the pertinent legal principles or the consequences of the agreement. Boiled down to its essence, Father is asserting that the agreement resulted from "a deficiency" in Pepper's "exercise of his professional judgment" in pursuing one litigation strategy over another. As the Superior Court noted in *McMahon v. Shea*, the *Muhammad* rule operates to preclude malpractice suits where a litigant claims his unfavorable settlement resulted merely from his lawyer's exercise of professional judgment. Thus, these malpractice claims asserted by Father are precluded as a matter of law.

Further, Father gave his informed consent to the agreement entered on January 22, 2008. The record from the hearing reveals a setting forth of the specifics of the custody

15

agreement. At one point, as the agreement was being set forth, Father interjected his comment that he felt the transportation provisions for Paul Christopher were too broadly stated and that there was conflict in the transportation provisions. N.T., 1/22/08, p. 7. Later in the hearing, Father responded to a question by the judge that he understood provisions regarding any planned removal of the child from Pennsylvania. N.T., 1/22/08, p.20. Finally, Father gave his approval to the custody provisions put on the record by the attorneys. N.T., 1/22/08, p. 23.

Father's statement in his complaint (Paragraph 66(c)) that he was "unfairly pressured" by Pepper to enter into the January 22, 2008, agreement is contrary to Father's email to Pepper dated December 20, 2007. In it, Father stated to Pepper: "If you are successful in getting Zamborsky (Mother's attorney) & Heidi to discuss a custody arrangement, I would consider Heidi having title of primary physical custodian with the following visitation schedule (which Father then set forth)." (The December 20, 2007, email is attached to defendant Pepper's motion for summary judgment as Exhibit G.) Also, in a statement which is part of a document that Father prepared entitled "Self Report Progress Note, dated February 20, 2008," Father wrote:

> I made the hardest decision of my life on 1/22/08 by
> offering Heidi the title of primary physical custodian,
> not because she was deserving of it but because I hoped
> that by giving her what she craved most, that she would
> stop the hostile actions and start to cooperate in a civil,
> responsive manner that is in the best interests of our son.

Father further demonstrated that the January 22, 2008, agreement was his agreement with his testimony on March 24, 2009, during the custody trial, in the following exchange:

16



Q:    And why did you agree to the order (stipulated order of January 22, 2008)?

A:    Because I was very concerned about Nastasee's report having so many problems with it. I was concerned that I was going to have a worse – I was not going to see my son at all. And I had hoped that if I had given Heidi what she was craving, that the hostility and aggressiveness towards me would end, and that she would enable us to start co-parenting in the best interest of our son. And I had hoped, based on the terms of that agreement, that we would be able to use co-parent counseling and a parenting coordinator to resolve differences and get on better grounds so that in fact we would maximize the amount of time that both of us shared with our son.

N.T., 5/24/09, p.110.

For all of these reasons, Father claim of malpractice based on Pepper's allegedly forcing him to accept the agreement of January 22, 2008, lacks merit.

The final malpractice allegation against Pepper is that Pepper was negligent in not calling Doctor Samuel or Father as witnesses on October 8, 2008, when I heard the petition for the parties to be evaluated by Doctor Samuel. According to Father, the failure to call either or both of these witnesses "significantly increased the ease with which Heidi, representing herself, subsequently succeeded in getting the trial court to vacate its original order authorizing the new evaluation." (Paragraph 66(g), Complaint.)

There is no evidence of malpractice by Pepper from his presenting the petition for the evaluation on October 8, 2008. I controlled that hearing. I decided the petition based upon the offers of proof from counsel and their arguments. A review of the notes of testimony from that hearing reflects that Pepper offered to present Doctor Samuel or Father

17

ADD21

or both. Pepper's presentation overcame my initial reluctance to have another psychological evaluation. I granted the petition.

Mother's motion for reconsideration which was filed on October 16, 2008, was heard on November 13, 2008. I began that hearing by indicating that I was second-guessing the wisdom of allowing an evaluation by Doctor Samuel. After additional arguments by the attorneys, I entered an order cancelling the evaluation. However, I made it clear that I was denying the request for an evaluation without prejudice and I explained how the court would handle scheduling if the evaluation were granted at a later date. There were no further requests for an evaluation.

There is no basis for a legal malpractice action on the topic of defendant Pepper's request for an evaluation by Doctor Samuel, not when Pepper succeeded in getting the court to allow the evaluation under authorized procedures used by the court. By the way, the allegation in Paragraph 66(g) of the complaint that Pepper's failure to call witnesses at the October 8 hearing "significantly increased" Mother's getting the trial court to cancel the evaluation by way of reconsideration is just not accurate.

Father bases the breach of contract claim against defendant Pepper on his negligence claims. Because there is no factual or legal basis to the allegations of malpractice, I enter summary judgment for Pepper on the breach of contract action as well.

January 25, 2012

WILLIAM E. FORD, JUDGE

18